Derry Family Division
No. 2010-785

IN THE MATTER OF MARTY A. HENRY AND THOMAS A. HENRY

Argued: November 10, 2011
Opinion Issued: January 13, 2012

*Burnham & Associates, PLLC*, of Hampton (*Stephanie K. Burnham* on the brief and orally), for the petitioner.

*Michael F. Mimno*, of Andover, Massachusetts, by brief and orally, for the respondent.

HICKS, J. The respondent, Thomas A. Henry, appeals the final decree in his divorce from the petitioner, Marty A. Henry. He argues that the Derry Family Division (*Moore*, J.) erred when it granted the petitioner a fault-based divorce. He also challenges the trial court's division of the parties' property and its decision to award the petitioner alimony. We affirm.

The trial court found the following facts. The parties were married for approximately thirty-six years. Although they did not conceive any children together, in 1979 the respondent adopted the petitioner's son. On May 22, 2009, the petitioner petitioned for a fault-based divorce on the ground that the respondent had "so treated [her] as seriously to injure [her] health or endanger [her] reason." RSA 458:7, V (2004). She alleged that the parties' relationship broke down approximately a week before she filed for divorce, on May 14, 2009, when the parties' son informed her that the respondent had sexually abused him when he was twelve. She contended that the discovery of this information seriously endangered her health and reason, causing her to suffer from depression, insomnia and weight loss. Although the respondent denied the allegation, the trial court found that his denial was not credible.

Based upon the petitioner's testimony and that of her son and daughter-in-law, as well as an e-mail message and voicemail message from the respondent, the trial court granted the petition for a fault-based divorce, finding that the respondent's inappropriate conduct with the parties' son seriously endangered the petitioner's health and reason. Given the petitioner's inability to provide for her own reasonable needs and the respondent's ability to provide for both his needs and hers, the trial court awarded the petitioner $1,500 per month in alimony until the respondent retires from his current position at General Electric and begins receiving a pension. Additionally, the court ordered a slightly unequal distribution of the parties' assets, with the petitioner receiving fifty-three percent and the respondent receiving forty-seven percent of them. This appeal followed.

Before addressing the parties' arguments, we note that although the trial court specifically ruled upon the petitioner's requests for findings and rulings, the respondent, who is the appealing party, has not provided the requests for findings and rulings in the record submitted on appeal; therefore, the record does not reflect the substance of the trial court's rulings. However, we assume that they support the trial court's decision and, further, we do not consider ourselves limited to the findings and rulings the trial court recited in its narrative order. *See In re Guardianship of Nicholas P.*, 162 N.H. 199, 202 (2011).

*I. Fault-Based Divorce*

■ We first address the respondent's assertion that the trial court erred by granting the petitioner a divorce on the ground of conduct that seriously injured her health or seriously endangered her reason. *See* RSA 458:7, V; *see also In the Matter of Guy & Guy*, 158 N.H. 411, 412 (2009) (explaining that the adverb "seriously" modifies both "injure health" and "endanger reason").

■ The gravamen of a cause of action for divorce on this ground is the injury to health or the danger to reason. *In the Matter of Guy & Guy*, 158 N.H. at 413. "Whether the behavior proved is a sufficient ground of divorce depends on whether it has seriously injured health or endangered reason. This is the *sole test." Id.* (quotation and ellipsis omitted; emphasis added). While the statute does not require proof of conduct that would have affected an average or reasonable person, it does require proof that the health or reason of the complaining spouse was *actually* affected. *Id.* Whether the innocent party has been so treated is a question of fact for the trial court. *Id.* We will sustain the trial court's findings on this issue unless they lack evidentiary support or are legally erroneous. *Id.*

 Because the record supports the trial court's finding that the respondent's conduct seriously injured the petitioner's health or seriously endangered her reason, we uphold it. The parties' son testified that on May 14, 2009, he told the petitioner that the respondent had abused him beginning when he was twelve or thirteen years old. The son said that the abuse happened in connection with "buddy showers," which were showers he took with the respondent when he was twelve or thirteen years old ostensibly to help him become "familiar with naked men" and to "conserve water."

The petitioner testified that the conversation took place as follows:

> [M]y son looked at me and brought up these buddy showers that . . . had been explained to [me] were so that when he entered high school and . . . [was] going to be confronted with the male body . . . [the buddy showers were] to make him feel more comfortable . . . .
>
> The expression on his face scared me, and I looked at him and I said, but they were buddy showers. And he told me they were more than buddy showers. I asked him one question, I said can you please tell me the act that I think you're talking about was never consummated, that you weren't violated, and he said I can't tell you that, and I'm sorry.

The petitioner testified that a few days later, after she had met with her divorce attorney, she confronted her husband:

> I looked at [the respondent] and I said I know what you've done to my son. . . . [T]hen I said this is my attorney's card. I filed for divorce this morning, and I want your house keys and credit cards . . . . I told him his things were in the hot-tub room. . . . [H]is first comment when I told him I knew what he had done was it's not like it wasn't consensual. And with that remark, my daughter-in-law freaked out, got very upset, how could you call it consensual with a child? He said, well, it was probably a moment of weakness on both parts. And I told him I couldn't let him in the house.

The next morning, the respondent sent an e-mail to the petitioner, which stated: "I don't want to be divorced. I want to stay with my family of 35 years. . . . I'm deeply sorry I hurt you because I screwed up 30 years ago. I never meant to hurt [our son]. . . ." The respondent also left a voice mail message for the petitioner in which he again stated that the incident "was probably a moment of weakness on both parties' part." Additionally, the petitioner testified that she asked the respondent about his conduct "on

numerous occasions." The respondent said, "I was just a kid. . . . I didn't know what [I] was doing." When the petitioner asked the respondent why the abuse stopped, he "wouldn't answer that question." At trial, the respondent admitted taking "buddy showers" with the parties' son when the son was a child.

The petitioner testified that when her son told her about the abuse, she "freaked out" and that this "lasted for quite a while." She testified that she "feel[s] like someone that [she] loved and trusted totally destroyed [her] and [her] son." The petitioner testified that as a result of learning that the respondent abused her son, she has "had a lot of anxiety attacks" and has "gone into depression." She testified that as a result of the disclosure, she is seeing a counselor and taking medication for her symptoms. She also testified that she has "lost a little bit of weight a little quicker than they probably wanted [her] to, even though [she] ha[s] had [gastric bypass] surgery to do that." Additionally, she testified that she suffers from "the shakes, . . . lightheadedness[,] . . . and . . . dizziness," which she attributes to "nerves."

The parties' son testified that as a result of his disclosure about the abuse, the petitioner "has been extremely upset, withdrawn, daily almost" and has had "far more bad days than good days." He testified, "Days she'll sit crying in the dark in the living room in the love seat under a blanket." He also testified that she has suffered from "weight loss, dropped-foot syndrome" as well as "[p]eriods of lightheadedness, dizziness."

■ The evidence supports the trial court's finding that the respondent's conduct caused serious injury to the petitioner's health or seriously endangered her reason. "While the testimony presented by the parties conflicted, the trial judge was in the best position to evaluate the evidence, measure its persuasiveness and assess the credibility of the witnesses." *In the Matter of Mannion & Mannion*, 155 N.H. 52, 57 (2007). Here, the record supports the trial court's findings, and we find no legal error in its decision to grant the petitioner a divorce on the ground that the respondent's conduct seriously injured her health or seriously endangered her reason.

■ We reject the respondent's assertion that his alleged conduct was insufficient as a matter of law to constitute treatment that seriously injured the petitioner's health or seriously endangered her reason because it occurred thirty years ago and was not directed towards the petitioner herself. *"Any behavior"* that "affects the other physically or mentally is treatment within the meaning of the statute." *In the Matter of Guy & Guy*, 158 N.H. at 413 (quotations omitted; emphasis added). For a spouse's behavior to satisfy the statute, "[i]t does not matter whether the conduct

was directed towards the innocent spouse or whether the guilty spouse engaged in the conduct with malevolent intent." *Id.* While the respondent's alleged conduct may have occurred many years ago, the petitioner learned of it only days before filing for divorce.

■ We also reject his assertion that the trial court was compelled to find that the petitioner's symptoms were not caused by his alleged conduct. Both the petitioner and her son testified that they were so caused. While the respondent disputed this, it was for the trial court to resolve such conflicts in evidence. *See In the Matter of Aube & Aube*, 158 N.H. 459, 465 (2009). As the fact finder, the trial court was entitled to accept or reject, in whole or in part, the testimony of any witness or party, and was not required to believe even uncontroverted evidence. *Id.* at 466.

The respondent also argues that the petitioner's symptoms do not qualify for consideration under the statute as a matter of law. He likens this case to *In the Matter of Guy & Guy*, 158 N.H. at 413-14. *In the Matter of Guy & Guy* is factually distinguishable from this case. The petitioner in *In the Matter of Guy & Guy* was only "angry, upset, and distraught" when she discovered that her husband, the respondent, was exchanging e-mails with other women, including a former girlfriend. *Id.* at 413 (quotation omitted). There was no evidence that the husband's conduct had harmed her physical well-being. *Id.* at 414. Nor was there evidence that she suffered the type of mental anguish the statute was intended to encompass. *Id.* By contrast, there was evidence that the petitioner in this case fell into a depression, spent days crying, lost weight, and experienced dizziness and lightheadedness as a result of learning that her husband had sexually abused her son when her son was a child. There was also evidence that the respondent's alleged conduct caused the petitioner to seek counseling and medication for her symptoms.

■ We have previously ruled that symptoms similar to the petitioner's suffice. *See In the Matter of Peirano & Larsen*, 155 N.H. 738, 753 (2007) (wife suffered "significant emotional distress" and sought assistance of pastoral counselor (quotation omitted)); *In the Matter of Gronvaldt & Gronvaldt*, 150 N.H. 551, 553-54 (2004) (wife suffered emotional distress and sought counseling); *Routhier v. Routhier*, 128 N.H. 439, 440 (1986) (wife sought counseling); *Morgan v. Morgan*, 101 N.H. 470, 471 (1958) (wife became "highly nervous" and lost weight); *Szulc v. Szulc*, 96 N.H. 190, 191 (1950) (wife lost considerable weight and became "a complete wreck" (quotation omitted)). Given the severity of the petitioner's symptoms, we cannot say that, as a matter of law, the effect on her physical and mental health is insufficient to sustain a divorce under RSA 458:7, V.

*II. Alimony*

We next address the respondent's challenge to the alimony award. RSA 458:19 (Supp. 2010) authorizes a trial court to award alimony if: (1) the party in need "lacks sufficient income, property, or both, including property apportioned in accordance with RSA 458:16-a, to provide for such party's reasonable needs, taking into account the style of living to which the parties have become accustomed during the marriage"; (2) the party from whom alimony is sought "is able to meet reasonable needs while meeting those of the party seeking alimony, taking into account the style of living to which the parties have become accustomed during the marriage"; and (3) the party in need "is unable to be self-supporting through appropriate employment at a standard of living that meets reasonable needs."

In determining the amount of alimony, a trial court must consider various factors enumerated in RSA 458:19, IV. Specifically, the court must consider:

> the length of the marriage; the age, health, social or economic status, occupation, amount and sources of income, the property awarded under RSA 458:16-a, vocational skills, employability, estate, liabilities, and needs of each of the parties; the opportunity of each for future acquisition of capital assets and income; the fault of either party as defined in RSA 458:16-a, II(*l*); and the federal tax consequences of the order.

RSA 458:19, IV(b). The court "may also consider the contribution of each of the parties in the acquisition, preservation, or appreciation in value of their respective estates and the noneconomic contribution of each of the parties to the family unit." RSA 458:19, IV(d).

Trial courts have broad discretion in awarding alimony. *In the Matter of Peirano & Larsen*, 155 N.H. at 746. We review the trial court's decision under our unsustainable exercise of discretion standard. *Id.*

■ The respondent first argues that the trial court failed to consider the statutory factors listed in RSA 458:19, IV. In its narrative order, however, the trial court specifically stated that it considered "the length of the parties' marriage, their age, their health, their social and economic status, the Respondent's occupation and the Petitioner's lack of full time gainful employment" as well as "the amount of resources of current and future income and the property awarded pursuant to RSA 458:16" and "each party's vocational skills, . . . current employability, the liability and needs of each party and [the] opportunity for future acquisition of assets and income[, and] the fault entered on behalf of the Respondent." The court also found facts relevant to the statutory factors enumerated in RSA 458:19, IV.

The respondent next asserts that the evidence does not support the trial court's finding that he is able to meet his own reasonable needs while meeting those of the petitioner as well. As there is evidence to support this finding, we uphold it. He contends in effect that even if the trial court considered the relevant statutory factors and even if there is evidence to support its factual findings, it failed to weigh the statutory factors properly. However, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence. *In the Matter of Aube & Aube*, 158 N.H. at 465. We conclude that on the record before it, the trial court was not compelled to deny the petitioner's alimony request.

*III. Property Distribution*

■ "RSA 458:16-a, II creates a presumption that equal distribution of marital property is equitable." *In the Matter of Watterworth & Watterworth*, 149 N.H. 442, 453 (2003) (quotation and ellipsis omitted). Absent special circumstances, the court must make the distribution as equal as possible. *Id.*

■ "The statute enumerates various factors for the court to consider, such as the length of the marriage, the ability of the parties to provide for their own needs, the needs of the custodial parent, the contribution of each party during the marriage and the value of property contributed by each party." *In the Matter of Crowe & Crowe*, 148 N.H. 218, 221 (2002); *see* RSA 458:16-a, II (2004). Additionally, the court may consider "[a]ny other factor [it] deems relevant" in equitably distributing the parties' assets. RSA 458:16-a, II(o). A trial court is not precluded, however, from awarding a particular asset in its entirety to one party. *In the Matter of Maynard & Maynard*, 155 N.H. 630, 637 (2007). As we afford trial courts broad discretion in determining matters of property distribution in fashioning a final divorce decree, we will not overturn the trial court's decision absent an unsustainable exercise of discretion. *Id.* If the court's findings can reasonably be made on the evidence presented, they will stand. *Id.*

■ The respondent first challenges the trial court's ruling requiring him to pay "one half of any COBRA costs that the parties may incur in order to maintain [the petitioner's] health insurance coverage." Because the respondent has not demonstrated that he preserved this argument for our review, we decline to consider it. *See In the Matter of Canaway & Canaway*, 161 N.H. 286, 291-92 (2010).

The respondent next asserts that the trial court's distribution of the parties' marital property was inequitable. Specifically, he argues that he is entitled to a greater share of the parties' real estate holdings, his

184

retirement plan accounts and other tax-deferred assets, the parties' household furnishings, and the parties' tax refund received in 2009. He contends as well that it was inequitable for the court to have required him to continue making payments on the equity line encumbering the marital home and to pay a greater percentage than the petitioner of certain of the parties' debts. Further, he argues that he should not be responsible for certain uninsured medical expenses and that he is entitled to an award from the marital estate to reimburse him for his attorney's fees and costs. Based upon our review of the record submitted on appeal, and considering the trial court's finding of fault, we conclude that the trial court's distribution of property between the parties does not require reversal. *In the Matter of Stapleton & Stapleton*, 159 N.H. 694, 698 (2010).

To the extent that the respondent asserts that the trial court erred as a matter of law by dividing assets that the respondent inherited from his parents during the marriage, we disagree. By statute, marital property subject to equitable distribution "shall include *all* tangible and intangible property and assets, real or personal, belonging to either or both parties, whether title to the property is held in the name of either or both parties." RSA 458:16-a, I (2004) (emphasis added); *see* RSA 458:16-a, II ("When a dissolution of a marriage is decreed, the court may order an equitable division of property between the parties."). This statutory definition of marital property subject to equitable distribution does not exclude inherited property "belonging to either or both parties." RSA 458:16-a, I. While RSA 458:16-a, II(n) allows a trial court to consider the "value of any property acquired by gift, devise, or descent" in determining whether an equal division of marital property is equitable, it does not require the trial court to consider this or to assign it any particular weight. *See In the Matter of Costa & Costa*, 156 N.H. 323, 327 (2007).

*Affirmed.*

DALIANIS, C.J., and DUGGAN, CONBOY and LYNN, JJ., concurred.