**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2014-0658, <u>In the Matter of John Tucker, II and Holly Tucker</u>, the court on June 15, 2015, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The petitioner, John Tucker, II, appeals a final decree issued by the Circuit Court (<u>LeFrancois</u>, J.) in his divorce from the respondent, Holly Tucker. <u>See</u> RSA 458:16-a (2004); RSA 458:19 (Supp. 2014). He contends that the trial court erred in the distribution of marital assets by: (1) finding that the equity in the respondent's motor vehicle was approximately $1,892; (2) not taking into consideration its finding that "the equity created in Respondent's vehicle was the result of payments made solely from Petitioner's business income"; (3) miscalculating the value of the assets awarded to the respondent, thereby miscalculating the payment required from him to equalize the property distribution; (4) ordering him "to make monthly payments of $1,000 directly to Respondent as periodic payments toward the amount of joint debt assigned to" him; and (5) "failing to recognize[,] and[ ] draw the inferences necessary to correct, the disability imposed on [him] by [the respondent's] failure to provide the Court with facts necessary to substantiate her claims about the use of her credit cards to support the marital household during the course of the marriage." He further contends that the trial court erred in awarding the respondent alimony by failing to analyze her ability to support herself in the standard of living to which she was accustomed during the marriage and her reasonable needs.

We first address the distribution of marital assets. In reviewing the trial court's distribution of marital property as part of a final decree of divorce, it is not our role to reweigh the equities in the case and divide the property accordingly. <u>In the Matter of Heinrich & Heinrich</u>, 164 N.H. 357, 365 (2012). Rather, our limited role is to determine whether the trial court's decision was a sustainable exercise of discretion. <u>In the Matter of Henry & Henry</u>, 163 N.H. 175, 183 (2012). "When we determine whether a ruling made by a judge is a proper exercise of judicial discretion, we are really deciding whether the record establishes an objective basis sufficient to sustain the discretionary judgment made." <u>State v. Lambert</u>, 147 N.H. 295, 296 (2001). If the trial court's findings can reasonably be made on the evidence presented, they will stand. <u>Henry</u>, 163 N.H. at 183.

RSA 458:16-a, II creates a presumption that an equal distribution of marital property is equitable. "In a divorce proceeding, marital property is not to be divided by some mechanical formula but in a manner deemed 'just' based upon the evidence presented and the equities of the case." In the Matter of Sarvela & Sarvela, 154 N.H. 426, 431 (2006) (quotation omitted). A trial court is not precluded from awarding a particular asset in its entirety to one party. Henry, 163 N.H. at 183. The trial judge is in the best position to evaluate the evidence, measure its persuasiveness, and assess the credibility of witnesses. In the Matter of Salesky & Salesky, 157 N.H. 698, 708 (2008). As the fact finder, the trial court is entitled to accept or reject, in whole or in part, the testimony of any witness or party, and is not required to believe even uncontroverted evidence. Henry, 163 N.H. at 181.

In his financial affidavit, the petitioner represented that the equity in the respondent's vehicle was $1,892. He did not move to amend his financial affidavit. Therefore, we conclude that the trial court's adoption of this figure was reasonable. See Salesky, 157 N.H. at 708. The trial court found that "[t]his is a long term marriage, which supports an equal distribution of assets," that "[b]oth parties made contributions into the marriage," and that "[b]oth parties made non-economic contributions to the marriage as parents and partners." Therefore, the source of the funds used to purchase an asset during the marriage does not control the distribution of that asset. See Henry, 163 N.H. at 183 (trial court may award marital asset in its entirety to one party). We conclude that the trial court's determination of the equity in the respondent's vehicle is supported by the record. Accordingly, we reject the petitioner's argument that "[t]he trial court's finding regarding the equity in Respondent's vehicle resulted in disproportionate equalization of the value of property in Respondent's favor."

The trial court found that the amount owed on certain credit cards in the respondent's name was joint debt and that "[i]t would be fair for the parties to evenly divide the debt that accrued on the credit cards." It ordered the petitioner to pay the respondent "a monthly amount of $1000 per month for 17.5 months towards the debt, and [the respondent] shall be responsible for the remaining debt payments to creditors." The petitioner argues that "[t]here is no obligation imposed upon Respondent to use those funds to make payments to the creditors found to be joint creditors." However, because the credit cards are only in the respondent's name, the trial court correctly observed that the petitioner "is not obligated on the debt, only [the respondent] is. . . . Should she fail to pay, his liability is limited."

The petitioner argues that the trial court's finding that "[t]he weight of credible evidence suggests that these credit cards were used for family expenses. . . . [and] should be considered marital debt" was "contrary to the weight of the evidence provided by Respondent herself." However, the respondent testified that the family "lived on credit" and that, in the years when the petitioner's business

2

income was low, "anything that we could put on credit, we put on credit." The petitioner testified that he did not pay attention to household finances. We disagree with the petitioner's contention that the trial court "committed an unsustainable exercise of discretion by shifting the burden of proof regarding credit card payments used to support the household from [the respondent] to [him], where access to the evidence necessary to support [his] claims was in [the respondent's] sole control." We defer to the trial court's determination of the weight given to specific evidence. See Henry, 163 N.H. at 183.

The petitioner argues that the trial court erred by failing to draw a negative inference from the respondent's failure to provide her credit card statements for years past to support her claim that the credit cards were used for household purposes. However, the respondent testified, and the petitioner did not contest, that she executed authorizations to allow the petitioner to obtain the credit card information. Furthermore, she testified that the credit card statements for prior years were in the marital home, which the petitioner occupied, and that he denied her access to the home to find them. In fact, the petitioner submitted the records covering January 2010 to January 2012 for one of the respondent's credit cards, which supported the trial court's finding that it had been used for household purposes. Therefore, we conclude that the trial court's decision not to draw a negative inference from the respondent's failure to produce the rest of her credit card statements from prior years was not unreasonable or untenable.

The petitioner argues that the trial court's order is unsustainable because it "places [him] in the position of further litigating the question of the property division's eligibility for discharge as a property obligation in bankruptcy or is [sic] in the nature of a non-dischargeable support obligation." However, the trial court stated that "[t]he orders for [the petitioner] to pay off the debt in installments to [the respondent] are in lieu of the Court ordering him to make a lump sum payment to her to account for his part of the obligation . . . . This is structured as a property settlement order." Furthermore, the trial court directed that "[s]hould [the respondent] file for bankruptcy, [the petitioner's] obligation to her would need to be disclosed as an asset." But cf. Johnson v. Coe, 142 N.H. 182, 186 (1997) (stating bankruptcy court may look beyond four corners of divorce decree to make a finding that the payments were in the nature of alimony even where the divorce decree included a waiver of alimony). The petitioner argues that "Respondent is able to defeat the clear intent of the trial court's order by seeking discharge of her portion of the joint debt using Petitioner's obligation to compromise her portion of the debt." Because the record does not demonstrate that the petitioner raised this argument to the trial court, we decline to address it. See Fam. Div. R. 1.26(F); N.H. Dep't of Corrections v. Butland, 147 N.H. 676, 679 (2002). We note that the same argument could be made had the trial court ordered the petitioner to pay a lump sum to satisfy his portion of the marital debt.

3

The petitioner notes that the trial court granted his requested finding regarding the credit card debts, which indicated that they had been "charged off [or] written off." However, he does not explain the significance of this finding, and, in the absence of any developed argument, we decline to reverse the trial court's allocation of debt. See State v. Blackmer, 149 N.H. 47, 49 (2003). We conclude that the record establishes an objective basis sufficient to sustain the trial court's distribution of the marital assets. See Henry, 163 N.H. at 183.

We next address the alimony award to the respondent of $485 per month for three years. RSA 458:19, I, authorizes the trial court to award alimony if: (1) the party in need lacks sufficient income, property, or both to provide for her reasonable needs, considering the style of living to which the parties have become accustomed during the marriage; (2) the payor is able to continue to meet his own reasonable needs, considering the style of living to which the parties have become accustomed during the marriage; and (3) the party in need cannot be self-supporting through appropriate employment at a standard of living that meets reasonable needs. We review the trial court's decision regarding alimony under our unsustainable exercise of discretion standard. Henry, 163 N.H. at 182.

In determining an amount of alimony, a trial court must consider: the length of the marriage; the age, health, social or economic status, occupation, amount and sources of income, the property awarded under RSA 458:16-a, vocational skills, employability, estate, liabilities, and needs of each of the parties; the opportunity of each for future acquisition of capital assets and income; the fault of either party as defined in RSA 458:16-a, II(l); and the federal tax consequences of the order. RSA 458:19, IV(b). Further, the court may consider the economic contribution of each party to the value of the parties' respective estates, as well as non-economic contributions to the family unit. RSA 458:19, IV(d).

The petitioner "acknowledge[s] that [his] historic support of his own reasonable needs and the reasonable needs of Respondent and the parties' children provides sufficient objective basis to support the finding" that he is able to meet his reasonable needs while meeting those of the respondent. See RSA 458:19, I(b). The petitioner states that "[t]he trial [court] erred by utilizing [his] income from 2012 and 2013, his highest earnings in the history of his business." However, he does not develop this argument, so we decline to address it. See Blackmer, 149 N.H. at 49.

The petitioner argues that "the trial court erred when it did not conduct the analysis . . . regarding Respondent's ability to be self supporting" and that it "lacked a sufficient objective basis to support the finding . . . that Respondent is unable to be self supporting through appropriate employment." The trial court awarded the petitioner his business, his business equipment, and the marital

home.  The trial court found that during the parties' twenty-seven year marriage, the respondent had "historically" earned less than the petitioner and that the petitioner "has more potential to increase his income in the future relative to hers."  It considered the respondent's contributions to the petitioner's business and her care of the parties' children.  Although it noted that the respondent's income fell short of her claimed expenses "by approximately $1,100 per month on paper," it awarded her significantly less than that amount in alimony.

The petitioner argues that the trial court failed to assess the respondent's reasonable needs in light of its grant of his requested finding that during the marriage the parties enjoyed a modest standard of living.  However, the trial court considered the respondent's discretionary and non-recurring expenses and the fact that she is sharing accommodations with a roommate.  It awarded her only a portion of the shortfall between her income and her claimed expenses.  We conclude that the trial court's alimony award is reasonable and supported by the record.  See Henry, 163 N.H. at 182.

Affirmed.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.


**Eileen Fox,**
**Clerk**