**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2014-0751, <u>In the Matter of Michael Kurland and Jennifer Kurland</u>, the court on July 14, 2015, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case.  <u>See</u> <u>Sup. Ct. R.</u> 18(1).  We affirm in part, vacate in part, and remand.

The petitioner, Michael Kurland (husband), appeals the final decree of the Circuit Court (<u>Moore</u>, J.) in his divorce from the respondent, Jennifer Kurland (wife).  He argues that the trial court erred in:  (1) denying his motion for contempt; (2) granting the wife a fault-based divorce; and (3) dividing the marital estate.

As an initial matter, we note that a number of the husband's arguments are based upon his assertion that the trial court gave undue weight to the wife's testimony and insufficient weight to his testimony.  Accordingly, we note at the outset that "it is not our role to calculate how much weight a trial court should accord specific evidence."  <u>In the Matter of Choy & Choy</u>, 154 N.H. 707, 714 (2007).  We defer to the trial court's judgment on such issues as resolving conflicts in testimony, measuring the credibility of witnesses, and determining the weight to be given evidence.  <u>In the Matter of Aube & Aube</u>, 158 N.H. 459, 465 (2009).  The trial court as fact finder may accept or reject, in whole or in part, the testimony of any witness or party, and is not required to believe even uncontroverted evidence.  <u>Id</u>. at 466.  We will affirm the trial court's findings if a reasonable person could have made such findings based upon the evidence presented.  <u>Cook v. Sullivan</u>, 149 N.H. 774, 780 (2003).

With these principles in mind, we address the husband's first argument, which is that the trial court erred in denying his motion for contempt.  He asserts that the wife should have been found in contempt for violating the anti-hypothecation order in the temporary decree.  The contempt power is discretionary, and the proper inquiry is whether the trial court unsustainably exercised its discretion.  <u>In the Matter of Conner & Conner</u>, 156 N.H. 250, 253 (2007) (quotation omitted).  The wife testified that she sold four appliances for a total of $1,100 and that she used the money to purchase propane to heat the house.  She argues that she did not violate the court's order because the order allowed the parties to sell marital property to pay for necessary living expenses.  She also testified that the sale was necessary because the husband failed to

comply with the court's order requiring him to pay one-half of the mortgage, taxes, insurance, and other assessments related to the property, and that she was unable to obtain his compliance through counsel. The court concluded that the husband failed to meet his burden to prove that a finding of contempt was warranted. Based upon this record, we conclude that the trial court sustainably exercised its discretion in denying the husband's motion for contempt. See id.

The husband next argues that the trial court erred in granting the wife a fault-based divorce on the ground of conduct that seriously injured her health or endangered her reason. See RSA 458:7, V (2004). First, the husband asserts that prior to the hearing, the court articulated a standard that the wife would need to meet in order to obtain a divorce on such grounds, which entailed "more than just testimony from neighbors and friends that [the husband] has acted inappropriately." The court also advised the wife that she would need third-party, corroborating evidence, "more than a he said/she said." The husband argues that the court abandoned this standard when it granted the wife a divorce on fault grounds based primarily upon her uncorroborated testimony.

We first note that the court made its comments in the context of a discussion with the parties as to whether testimony from each of the numerous persons identified on their witness lists as "character references" would be required for trial. We are not persuaded that the court's comments were meant to set an evidentiary standard for proving fault grounds for divorce. Moreover, even assuming, without deciding, that the trial court incorrectly articulated the standard for proving fault grounds, the court applied the correct standard in its final decree. See In the Matter of Stapleton & Stapleton, 159 N.H. 694, 696-97 (2010) (trial court has inherent authority to correct its prior orders). The husband argues that he was prejudiced by the court's pre-hearing statements because he voluntarily dismissed a number of his witnesses in reliance upon them. However, the record fails to show that he raised this issue with the trial court; accordingly, we conclude that it is not preserved for review. See In the Matter of Peirano & Larsen, 155 N.H. 738, 744 (2007) (appellant must demonstrate that he preserved his issues for appellate review by first raising them in trial court); see also State v. Porter, 144 N.H. 96, 100-01 (1999) (rules of preservation are not relaxed for a self-represented party).

The husband's primary contention is that the evidence was insufficient to grant the wife a divorce based upon conduct that seriously injured her health or endangered her reason. Whether the husband's conduct was sufficient to grant a divorce on this ground depends upon whether such conduct seriously injured the wife's health or endangered her reason. See In the Matter of Henry & Henry, 163 N.H. 175, 178 (2012). This is a question of fact for the trial court. Id. We review sufficiency of the evidence claims as a matter of law, and

2

uphold the findings and rulings of the trial court unless they are lacking in evidentiary support or tainted by error of law. Knight v. Maher, 161 N.H. 742, 745 (2011) (brackets and quotation omitted). "[W]e accord considerable weight to the trial court's judgments on the credibility of witnesses and the weight to be given testimony." Id. (quotation omitted).

The wife testified that the husband had an explosive temper, misused prescription drugs, and often yelled obscenities at her. She testified that on one summer weekend toward the end of the marriage, she brought him lunch at his office, which was located adjacent to the office of a woman with whom he had been spending a considerable amount of time. When the wife arrived, the husband became "explosively angry," and told her to "[g]et the F out of here and don't ever come back." The wife left, upset and crying. As she was walking away, down a flight of stairs, the husband "start[ed] throwing wood two-by-fours" at her, a few of which hit her.

The wife also testified that the husband would leave home for days at a time, up to five nights per week, without informing her as to his whereabouts, and that he sometimes would not answer his cell phone while he was away. As a result, the wife developed sleep problems, for which she received medical treatment. She testified that as a result of her husband's behavior, she was "always very nervous and anxious" and "had trouble eating." She testified that she lost approximately fifteen pounds, and that other teachers at her school asked her why she was so thin. As a result, she avoided social contact with people, a point that the wife's neighbor corroborated.

In addition to this testimony, the trial court relied upon a domestic violence final order of protection that had been issued to the wife. In the protective order, the court found that the husband had abused the wife by squeezing her foot, causing bruising, and by leaving a loaded ammunition magazine on the garage floor with the purpose to terrorize her. The husband argues that the trial court erred in taking judicial notice of this order. "The general rule in this jurisdiction is that a contemporaneous and specific objection is required to preserve an issue for appellate review." In the Matter of Mannion & Mannion, 155 N.H. 52, 54 (2007) (quotation omitted). Even assuming, without deciding, that the husband's passing reference to hearsay evidence during his closing argument related to the protective order, we conclude that it did not satisfy the contemporaneous and specific objection requirement. See Milliken v. Dartmouth-Hitchcock Clinic, 154 N.H. 662, 668 (2006) ("An objection made later in the witness's testimony, during cross-examination by the defense, does not preserve this issue on appeal.").

The husband also argues that the court allocated insufficient time at the final hearing to address the wife's fault ground claim. We decline to address this issue because the record fails to show that he preserved it by raising it

3

with the trial court.  See In the Matter of Peirano, 155 N.H. at 744 (appellant has burden to provide a record demonstrating that he raised his issues in the trial court).  Based upon this record, we conclude that the evidence was sufficient to support the trial court's decision to grant a divorce on the ground of conduct that seriously injured the wife's health or seriously endangered her reason.  See In the Matter of Henry, 163 N.H. at 178-79.

The husband next argues that the trial court erred in its division of the marital estate.  First, he argues that the court erred to the extent that it relied upon its decision to grant a fault-based divorce.  Having concluded that the court did not err in granting a divorce on fault grounds, we find no error in its consideration of fault in its property division.  See RSA 458:16-a, II(l) (2004) (in dividing marital estate, trial court may consider fault grounds).

The husband also argues that the court erred in awarding the wife one-half of his pension according to the Hodgins formula.  See Hodgins v. Hodgins, 126 N.H. 711, 715-16 (1985) (superseded on other grounds by RSA 458:16-a, I (2004)).  We afford trial courts broad discretion in determining matters of property distribution in fashioning a final divorce decree.  In the Matter of Heinrich & Heinrich, 164 N.H. 357, 363 (2012).  We review the trial court's division of the parties' assets under our unsustainable exercise of discretion standard.  Id. at 363.  If the court's findings can reasonably be made on the evidence presented, they will stand.  Id.

"In Hodgins, we held that under certain circumstances, the apportionment of future pension benefits may be determined according to a formula."  Rothbart v. Rothbart, 141 N.H. 71, 73 (1996).  "The formula is comprised of three factors:  (1) the marital assets distribution share; (2) the percentage reflecting the number of months employed while married and prior to the commencement of the divorce proceedings divided by the total number of months employed; and (3) the amount of the monthly pension benefit."  Id.  The husband argues that without expressly quantifying each of the three Hodgins factors, the court failed to adequately explain how the Hodgins formula led it to conclude that the wife was entitled to one-half of his pension.

RSA 458:16-a, II (2004) creates a presumption that equal distribution of marital property is equitable.  In the Matter of Heinrich, 164 N.H. at 363.  "Absent special circumstances, the court must make the distribution as equal as possible."  Id.  "The statute enumerates various factors for the court to consider, such as the length of the marriage, the ability of the parties to provide for their own needs, . . . the contribution of each party during the marriage and the value of property contributed by each party."  Id. (quotation omitted).  RSA 458:16-a, IV (2004) requires the trial court to "specify written reasons for the division of property which it orders."  See id. at 364.

4

In this case, the trial court, in rejecting both parties' proposed final decrees, stated that it was concerned that neither party's proposed order properly considered the length of the marriage, the parties' contributions to the marital estate, each party's services as a "homemaker/provider," the assets brought into the marriage, and the steps each party took to maintain the marital estate during the marriage. In consideration of these factors, the court awarded the wife "one-half of the Petitioner's State of New Hampshire law enforcement pension as of the date of this Decree pursuant to the Hodgins formula." We construe the court's order to provide the wife with a "marital assets distribution share," the first of the three Hodgins factors, of fifty percent, with the actual pension award to be determined by applying all three Hodgins factors. See Rothbart, 141 N.H. at 73 (listing factors); see also Hodgins, 126 N.H. 715-16 (applying formula where wife receives equal distribution of marital assets). Given the record and the trial court's narrative order, we conclude that the court made sufficient written findings to support its decision. See In the Matter of Heinrich, 164 N.H. at 364.

The husband next argues that the trial court erred in awarding the wife a forty percent share of the $180,000 proceeds from the sale of the marital residence. In dividing the sale proceeds, the trial court expressly considered the length of the marriage, the parties' financial contributions to the marriage, the wife's contribution as a homemaker, the parties' pre-marital assets, and each party's contribution to the maintenance of the marital estate. The husband argues that the court erred in crediting the wife's testimony that she contributed $40,000 of her pre-marital savings toward the household debt, when she admitted on cross-examination that she could not provide documents to support her testimony. As previously noted, the trial court is in the best position to resolve conflicts in testimony, measure the credibility of witnesses, and determine the weight to be given evidence. In the Matter of Aube, 158 N.H. 465. Based upon this record, we cannot conclude that the trial court unsustainably exercised its discretion in awarding the wife a forty percent share of the proceeds from the sale of the marital residence. See In the Matter of Heinrich, 164 N.H. at 365.

The husband next argues that the trial court erred in its division of the proceeds from the sale of the Freedom and Tamworth properties. The court awarded the wife twenty percent of the value of the land in Freedom, which the husband purchased prior to the marriage, and an equal share in the value of the trailer on the land, which was purchased during the marriage. The record supports the court's decision. See id.

The trial court also ordered the proceeds from the sale of the Tamworth property to be divided equally. The husband argues that the court erred to the extent that it relied upon its finding that the "Respondent [wife] reportedly

5

contributed $56,000.00 towards the purchase price." The husband correctly asserts that there was no testimony to support such a finding; to the contrary, the husband testified that he, not the wife, contributed $56,000 toward the purchase price. The wife does not address this discrepancy in her brief. We are unable to determine, based upon this record, whether the court based its decision upon an erroneous finding as to the source of funds used to purchase the property, or whether this is a drafting error. Accordingly, we vacate the court's division of the Tamworth property and remand for the court to clarify its decision. See In the Matter of Carr & Edmunds, 156 N.H. 498, 506 (2007) (declining to address issue without clear finding by trial court and remanding for clarification).

The husband challenges several other aspects of the trial court's property division. First, he challenges the court's division of the marital debts. The court found that the parties maintained separate bank accounts and separate credit cards, and that the wife made monthly payments to the husband during the marriage to pay her share of the marital debt. Accordingly, the court ordered each party to assume and be solely responsible for debts held in his or her name. Next, the husband challenges the court's award of both dogs to the wife. The court awarded both dogs to the wife based upon its finding that she was the person primarily responsible for their care. Finally, the husband challenges the court's order holding him solely responsible for the E-Z Pass debt. The trial court found that the husband cancelled the E-Z Pass credit card payment option without informing the wife, and that the wife stopped using the E-Z Pass once she learned that the husband cancelled the payment option. Each of the husband's challenges is based upon the trial court's credibility determinations and the weight it gave to the evidence presented. We conclude that the record supports the trial court's findings and that with respect to each of these issues the court sustainably exercised its discretion in its property division. See Cook v. Sullivan, 149 N.H. at 780; In the Matter of Heinrich, 164 N.H. at 365.

Affirmed in part; vacated in part; and remanded.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,
Clerk**