# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2023-0012, <u>In the Matter of Ulrike Newsted and Gary Newsted</u>, the court on February 13, 2024, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). In this appeal from a final order of the Circuit Court-Family Division (<u>Burns</u>, J.), the petitioner, Ulrike Newsted (Wife), appeals the trial court's ruling that she improperly redirected payments pursuant to a loan agreement from the respondent, Gary Newsted (Husband), to herself. The Wife argues that the family division: (1) lacked subject matter jurisdiction to divide the loan after ruling that the loan was not marital property; (2) impermissibly rewrote the loan agreement; (3) erred when it failed to find that the Husband waived his rights under the loan agreement; and (4) erred when it found that the Wife was the author of a contested email. We affirm.

The record supports the following facts. The parties were married in April 2016, and they divorced in May 2019. In November 2016, the parties executed a loan agreement with the Wife's adult son. The agreement lists the Husband as "lender," the Wife as "co-lender," and the Wife's son as "borrower." The purpose of the loan was "to pay off five student loans that [the son] was responsible for." A portion of the loan was used to pay off three student loans that the Wife had taken out to finance her son's college education, and the balance of the loan was used to pay off two loans that the son had taken out to pay for college. The Husband provided the funding for the loan, which he derived from an inheritance from his parents. Pursuant to the loan agreement's payment terms, the son was required to make ninety-six monthly payments from December 2016 through December 2024 directly to the Husband's bank account.

From December 2016 until April 2019, the son issued monthly payments to the Husband's account. In April 2019, the Wife instructed her son to redirect the monthly loan payments to her rather than to the Husband. The son thereafter issued the monthly loan payments to the Wife. The final divorce decree, dated May 27, 2019, did not address the loan, even though both parties listed the loan as an asset on their financial affidavits.

In January 2022, the Husband filed a motion for contempt, alleging that the Wife "wrongfully, and without right, redirect[ed] payments owed from a

personal loan" to herself in violation of the terms of the loan agreement.  The family division held a two-day hearing on the motion in June and July 2022.  Much of the hearing testimony centered around a May 15, 2019 email entitled "Fini," in which the Husband allegedly told the son: "Our divorce is final.  You are absolved of any debt to me and there will be no civil action against you.  Have a good life."  Both the Husband and the Wife denied authoring the "Fini" email.

In its October 2022 order, the trial court ruled that the Wife had no legal basis or authority to redirect the loan payments from the Husband to herself, explaining that "[t]here was no writing that allowed it, and no writing that altered the terms of the loan agreement in any way."  Although the court acknowledged that the Husband and the Wife are both identified in the loan agreement as lenders, it concluded that "this does not defeat [the Husband's] claim that he is entitled to repayment of the loan, and that [the Wife] is not so entitled."  The court reasoned that "while [the Wife] may argue that the inherited funds were a marital asset," the fact that the loan benefitted the Wife and her son by allowing them to consolidate their loans "militate[s] against such a finding."  The court determined that allowing the Wife to "use her husband's inheritance to achieve the elimination of her own debt – the direct benefit of the loan – and also achieve the direct benefit of getting repaid by her son after divorcing her husband" would unjustly enrich the Wife.

The family division also found that "[b]ased on the weight of credible testimony, and taking into consideration the demeanors of the witnesses," the Wife, not the Husband, wrote the "Fini" email, and that "[t]his email was a false, deceitful attempt on the part of [the Wife] to alter the repayment arrangements of the loan due to [the Husband]."  The court ordered the Wife to disgorge the loan payments she had received since April 2019 and to pay the Husband any future loan payments she receives from her son.  The court denied the Wife's motion for reconsideration, and this appeal followed.

We first address the Wife's argument that the trial court acted outside of its subject matter jurisdiction because it "adjudicated the husband's ownership interest in the loan proceeds after ruling that the loan was not a marital asset and without analyzing the property division factors called for in RSA 458:16-a." This argument requires that we analyze the family division's jurisdiction to effectively determine which party is entitled to the loan payments.  "A court does not have power to hear a case concerning subject matters over which it lacks jurisdiction, and subject matter jurisdiction cannot be conferred where it does not already exist."  Colburn v. Saykaly, 173 N.H. 162, 164 (2020).  The ultimate determination as to whether the trial court has jurisdiction in this case is a question of law subject to de novo review.  Id.

As we have previously explained, "[t]he legislature established the circuit court in 2011 by merging the former probate and district courts and the former

2

judicial branch family division." Id. at 165 (quotation omitted). It conferred the jurisdiction, powers and duties of these former courts upon the circuit court and divided the circuit court into three divisions: a probate division, a district division, and a family division. Id. Although there remain statutory references "to the probate or district courts or to the judicial branch family division," those references "shall be deemed to be to the New Hampshire circuit court where it has exclusive jurisdiction of a subject matter and to the superior court and circuit court where the circuit court has concurrent jurisdiction with the superior court." RSA 490-F:18 (Supp. 2023). Thus, when we refer in this order to the family division, we necessarily refer to the circuit court.

"Because the powers and jurisdiction of the family division are limited to those conferred by statute, we look to the relevant statutes to determine whether the family division had subject matter jurisdiction." In the Matter of Muller & Muller, 164 N.H. 512, 517 (2013) (citation omitted). RSA 490-D:2 (Supp. 2023) provides, in pertinent part, that "the judicial branch family division" has exclusive jurisdiction over "[p]etitions for divorce, nullity of marriage, alimony, custody of children, support, and to establish paternity." RSA 490-D:2 (Supp. 2023). "The law is well settled that jurisdiction in divorce proceedings is a continuing one with respect to all subsequent proceedings which arise out of the original cause of action." Daine v. Daine, 157 N.H. 426, 427-28 (2008) (quotation omitted). RSA 458:16-a (Supp. 2023) authorizes the family division to distribute property that belongs to divorcing parties. See RSA 458:16-a, I ("Property shall include all tangible and intangible property and assets, real or personal, belonging to either or both parties, whether title to the property is held in the name of either or both parties."). When doing so, the court employs a two-step analysis. In the Matter of Chamberlin & Chamberlin, 155 N.H. 13, 16 (2007). First, the family division determines, as a matter of law, which assets constitute marital property under RSA 458:16-a, I. Id. Then, the court exercises its discretion to equitably distribute those assets pursuant to RSA 458:16-a, II. Id. The family division's determination as to whether certain assets constitute marital property presents a question of law, which we review de novo, while the equitable division of property is reviewed for an unsustainable exercise of discretion. Id.

Here, the Wife argues that the family division was deprived of its jurisdiction to resolve the parties' loan dispute because the court concluded either that the loan was not marital property or that a determination of whether the loan was marital property was unnecessary. The Wife claims that the trial court ruled that the loan was not marital property when it stated that "while [the Wife] may argue that the inherited funds were a marital asset, the following additional considerations militate against such a finding." However, the Wife misreads the trial court's order. The court's order distributed the loan payments, not the Husband's inheritance.

3

The court further explained that deciding whether the loan was marital property awarded to one party or the other at the time of the divorce "is unnecessary, given the Court's finding and ruling that the loan to [the son] must be paid in accordance with its original terms, and not according to the terms which [the Wife] attempted to re-write, without authority or legal basis." Contrary to the Wife's assertion, the court did not state that deciding whether the loan was marital property was unnecessary, but, rather, it explained that determining whether the loan was marital property awarded to one party or the other at the time of the divorce was unnecessary. By noting that "each party could argue that the loan had been awarded to him or her," the court acknowledged that the loan was marital property but concluded that there was insufficient evidence to decide whether the divorce decree awarded the loan to the Husband or the Wife. Therefore, the court, at least implicitly, ruled that the loan was marital property. Based on this ruling, the court acted within its jurisdiction when it ordered that the loan be paid according to its original terms.

Thus, given that the parties agree that the loan agreement concerns marital property and because the family division has exclusive jurisdiction over marital property, we conclude that the family division — not the superior court — was the proper forum for addressing issues arising from the agreement. See Maldini v. Maldini, 168 N.H. 191, 196 (2015). Accordingly, the family division did not exceed the scope of its subject matter jurisdiction when it distributed the loan.[1]

To the extent that the Wife argues that, even if the court acted within its jurisdiction in deciding the parties' loan dispute, the court erred by failing to explicitly reference the factors enumerated in RSA 458:16-a, II in its final order, we disagree. See RSA 458:16-a, IV ("The court shall specify written reasons for the division of property which it orders."). "The trial court's statutory obligation is to apportion the property equitably." In the Matter of Sarvela & Sarvela, 154 N.H. 426, 431 (2006). "In a divorce proceeding, marital property is not to be divided by some mechanical formula but in a manner deemed 'just' based upon the evidence presented and the equities of the case." Id. (quotation omitted). "The court need not consider all of the enumerated factors [in RSA 458:16-a, II] or give them equal weight." Id. Indeed, RSA 458:16-a, II(o) grants the court discretion to consider "[a]ny other factor that the court deems relevant." Here, the court issued a narrative order and ruled on the parties' requests for findings of fact and rulings of law. In its order, the court determined that allowing the Wife to retain and receive the loan

---

[1] The Wife also asserts that the trial court's lack of citation to the factors enumerated in RSA 458:16-a, II (Supp. 2023), pertaining to the equitable division of marital property, is "but further indication that the Family Division exceeded the scope of its statutory jurisdiction." However, we fail to see how any alleged deficiencies in the trial court's order deprived the court of jurisdiction to decide the instant dispute.

payments would "fl[y] in the face of fundamental fairness," and that, "[i]f allowed, this Court believes she would be unjustly enriched." Thus, we conclude that the court complied with its statutory obligation to explain the bases for the distribution it ordered. See id. at 433.[2]

The Wife also argues that the trial court erred by finding that she authored the "Fini" email and by failing to find that the Husband waived his rights under the loan agreement. We will affirm the trial court's factual findings unless the evidence does not support them or they are legally erroneous. In the Matter of Martel & Martel, 157 N.H. 53, 62 (2008). The trial court found that the Wife was the source of the "Fini" email that allegedly released the son from his obligations under the loan agreement. The trial court concluded that "[b]ased on the weight of credible testimony, and taking into consideration the demeanors of the witnesses, . . . [the Husband] did not author the Fini email, and [the Wife] did." The court credited the Husband's testimony that he would never have forgiven the loan and could not have sent the email because it was sent at a time when he did not have access to the internet or his email account. The court also found that the Wife had access to the Husband's email account and "had a motivation to have sent such a message to her son." Further, the court determined that the "style and nature of the email . . . would have been totally out of character" for the Husband based upon the other emails introduced as evidence.

The court also credited the Husband's testimony that he would not have entitled an email "Fini" because he did not speak any languages other than English. On the other hand, the court noted that the Wife spoke multiple languages at least at a basic level, including German, French, and Italian. "As the fact finder, the trial court was entitled to accept or reject, in whole or in part, the testimony of any witness or party, and was not required to believe even uncontroverted evidence." In the Matter of Henry & Henry, 163 N.H. 175, 181 (2012). Here, the trial court credited the Husband's testimony over the Wife's, and we will not disturb its decision to do so.

Finally, the Wife asserts that the absence of any correspondence between the Husband and the son from May 2019 to January 2022 regarding the loan payments evidences a waiver of the Husband's right to pursue the payments. "To establish waiver, the plaintiff must show either explicit language indicating the defendant's intent to [forgo] a known right, or conduct from which it may be inferred that the defendant abandoned this right." Gianola v. Continental Cas. Co., 149 N.H. 213, 214 (2003).

---

[2] The Wife further argues that the trial court erred by impermissibly rewriting the loan agreement. However, because we conclude that the loan was marital property and that the family division did not err by awarding the loan in its entirety to the Husband, we need not reach the merits of this argument.

5

The trial court found that the Husband did not waive his right to seek payments on the loan. In reaching this finding, the trial court reasoned that the Husband "testified credibly that he would never have forgiven the loan . . . especially in light of the many other emails contained in the exhibits in which he discusses the loan at length." There is evidence in the record that the Husband repeatedly emailed the Wife's son in March and April 2019 regarding the loan payments. We defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence. In the Matter of Henry & Henry, 163 N.H. at 183. Therefore, we conclude that the trial court's finding is supported by the evidence and thus affirm its conclusion that the Husband did not waive his rights under the loan agreement.

Affirmed.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,
Clerk**