Brentwood Family Division
No. 2000-395

IN THE MATTER OF LISALYNN M. VALENCE
AND DAVID P. VALENCE

Argued: January 17, 2002
Opinion Issued: May 7, 2002

*John A. Macoul*, of Salem, by brief and orally, for the petitioner.

*Honey Hastings*, of Amherst, by brief and orally, for the respondent.

DUGGAN, J. The respondent, David P. Valence, appeals an order issued by the Trial Court (*Taube*, J.) following a final hearing on the divorce petition filed by the petitioner, Lisalynn M. Valence. On appeal, the respondent contends the trial court erred in: (1) applying the same property distribution formula to vested and unvested stock options without

first determining what part of the unvested stock options were attributable to his employment during the marriage; (2) disregarding tax and other financial consequences of exercising stock options when it ordered immediate transfer of the property to the petitioner; (3) making insufficient findings to justify the property distribution; (4) failing to allocate a margin account; and (5) awarding a fixed amount of child support to the petitioner to continue until the youngest child reaches eighteen. We affirm in part, reverse in part and remand.

The parties married in 1986. In 1999, the petitioner filed a libel for divorce. Following three days of hearing, the court awarded the petitioner "a divorce on the grounds of adultery that caused the breakdown of the marriage." The trial court awarded the parties joint legal custody of their three children, granted primary physical custody of the children to the petitioner and ordered the respondent to pay child support. The trial court also concluded that a number of factors, including the respondent's fault in causing the breakdown of the marriage, warranted an unequal distribution of the marital estate, and the court awarded the petitioner approximately sixty-five percent of the marital assets. On appeal, we will affirm the findings and rulings of the trial court unless they are unsupported by the evidence or legally erroneous. *In the Matter of Preston and Preston*, 147 N.H. 48, 49 (2001).

We first address whether the trial court erred when it applied the same property distribution formula to vested and unvested stock options, without first determining what part of the unvested stock options were attributable to his employment during the marriage. During the marriage, the respondent's employer, on several occasions, granted him incentive stock options. These stock options allow the respondent to purchase his employer's publicly traded stock at a later date. The purchase price of the stock is determined by the market price at the time the options are granted. Each grant of stock options permits the respondent to purchase up to a specified number of shares, and expires in ten years if the respondent does not exercise the options by purchasing the stock. At the time of the grant, however, the respondent may not purchase all the shares granted; rather, the right to purchase shares vests over time. For example, a grant may vest over a period of four years; in the first year the respondent may purchase up to twenty-five percent of the shares granted, and in each of the three succeeding years, the respondent may purchase twenty-five percent more until the grant is completely vested. The vesting of these options, however, is contingent upon the respondent's continued employment with the company.

By the time the divorce proceedings began, the respondent owned both vested and unvested stock options. The respondent agrees that the vested

stock options should be considered marital property to be divided between the parties. *See* RSA 458:16-a, I (Supp. 2001). He argues that the court erred, however, when it distributed all of the unvested stock options as marital property without considering that the unvested stock options will vest only upon his continued employment with the company.

In a divorce case, the trial court must follow the dictates of RSA 458:16-a when ruling on a property settlement. RSA 458:16-a, I, states: "Property shall include all tangible and intangible property and assets, real or personal, belonging to either or both parties, whether title to the property is held in the name of either or both parties." Accordingly, the trial court must first determine what property belongs to the parties and therefore is properly considered marital property. *See Holliday v. Holliday*, 139 N.H. 213, 215 (1994) ("marital property includes any property acquired up to the date of a decree of legal separation or divorce"). After the trial court determines what property is marital property, RSA 458:16-a, II then directs the court to "order an equitable division of property between the parties." Although an equal division is presumed under the statute to be equitable, the court may determine that an equal division would not be appropriate or equitable. *Id.* Thus, the trial court has broad discretion in distributing property in the marital estate. *Hoffman v. Hoffman*, 143 N.H. 514, 517 (1999). Absent an unsustainable exercise of discretion, we will not overturn the trial court's decision on property distribution. *Id.*; *see also State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

We first address the respondent's argument that the trial court erred in deciding what portion of the stock options was acquired prior to the dissolution of the marriage. The trial court ruled that all the vested and unvested stock options were marital property under RSA 458:16-a, I. In its order, using its equitable authority, the court awarded approximately sixty-five percent of the marital assets to the petitioner. The court similarly awarded her sixty-five percent of the vested stock options and "sixty-five percent (65%) of the unvested options that will vest in the years 2000, 2001, 2002, 2003 and 2004." The respondent contends that before awarding the petitioner her share of the unvested stock options, the trial court should have first determined what portion of the unvested stock options represented compensation attributable to employment prior to the dissolution of the marriage and then equitably distributed that portion only.

We recently held that the gain recognized upon exercising stock options should be considered in determining income for child support purposes. *See In the Matter of Dolan and Dolan*, 147 N.H. 218, 222 (2001). In so holding, we acknowledged that the vested stock options, as well as the

stock purchased upon exercising the stock options, are properly viewed as assets, while the gain recognized upon exercising the stock options is properly viewed as income. *See id.* As income, we held the gain recognized upon exercising the stock options is properly included when calculating a parent's child support obligation under RSA 458-C:2, IV (Supp. 2001). *See id.* We have not, however, previously determined whether and to what extent unvested stock options are properly considered marital property to be divided under RSA 458:16-a.

■ Under RSA 458:16-a, I, property is defined to specifically include all intangible property belonging to a party. As the owner of unvested stock options, the respondent owns a contractual right to purchase stock, under certain conditions within a prescribed period of time at a predetermined price. This contractual right to purchase stock is intangible property. *Cf. Scripture v. Francestown Soapstone Co.*, 50 N.H. 571, 585 (1871). But determining that unvested stock options are property is not the end of the inquiry under RSA 458:16-a, I; the court must also determine what part of the unvested stock options *belonged* to the respondent at the time of the dissolution of the marriage. *See* RSA 458:16-a, I.

When determining what part of a pension belongs to a party upon dissolution of the marriage, we have previously held that the trial court should apply a mathematical formula to determine what portion of the pension is attributable to employment during the marriage and thus subject to distribution. *See Hodgins v. Hodgins*, 126 N.H. 711 (1985). Similarly, when determining what part of unvested stock options belong to a party upon dissolution of the marriage, many jurisdictions have used a fact-based inquiry to determine the appropriate mathematical formula for differentiating unvested stock options that were earned prior to the dissolution of the marriage from those earned after the dissolution of the marriage. *See Baccanti v. Morton*, 752 N.E.2d 718, 727-33 (Mass. 2001). In these jurisdictions, stock options intended to compensate an employee for services rendered prior to the dissolution of the marriage are considered marital property, while those intended only as an incentive for future services to be rendered after the marriage are not considered marital property. *See id.* at 729. Compensation for services to be rendered after the marriage is future income, which cannot be considered property belonging to a party at the time of the dissolution of the marriage. *See Stalb v. Stalb*, 719 A.2d 421, 427 (Vt. 1998); 24 AM. JUR. 2D *Divorce and Separation* § 518 (1998). In this case, the respondent's stock incentive plan states that "[t]he purpose of the Plan is to advance the interests of [the employer] and its stockholders by attracting and retaining associates and directors and providing such persons with incentives and rewards for

superior performance." Thus, the stock options granted in this case may have been a reward for past services, an incentive for future services, or a combination of both.

■ The respondent requested that the court distribute the unvested stock options by applying a time-based rule to reflect the amount of time each group of stock options was held during the marriage as compared with the total period of employment required before the options would vest. Under this rule, for each group of stock options, the court would first determine the amount of time that passed between the date of the grant and the dissolution of the marriage and then divide that number by the amount of time that will pass between the date of the grant and the date of vesting. *See Baccanti*, 752 N.E. 2d. at 730; *see also Hillebrand v. Hillebrand*, 130 N.H. 520, 525 (1988). This ratio, when multiplied by the number of shares in each group of stock options, represents the amount of stock options attributable to the respondent's employment during the marriage. *Baccanti*, 752 N.E.2d at 730. This time-based rule would be appropriate if all the unvested stock options were intended, when granted, as an incentive for future services. *See Davidson v. Davidson*, 578 N.W.2d 848, 857 (Neb. 1998). Because the trial court did not make an explicit finding and the record in this case does not clearly indicate that the stock options were intended for only future and not past services, we remand for the trial court to determine the portion of the stock options attributable to services rendered by the respondent during the marriage.

■ In determining the reason that the stock options were given, the trial court may consider the employee's stock option plan, testimony from the employee or the employer, or testimony from an expert witness, if offered. *See Baccanti*, 752 N.E.2d at 729. The trial court may also consider any evidence relevant to whether the employee stock options "were intended to (1) secure optimal tax treatment, (2) induce the employee to accept employment, (3) induce the employee to remain with the employer, (4) induce the employee to leave his or her employment, (5) reward the employee for completing a specific project or attaining a particular goal, and (6) be granted on a regular or irregular basis." *Davidson*, 578 N.W.2d at 856. Finally, the trial court may consider any other evidence relevant to determining the reason for granting the stock options. *See id.*

■■ The portion of the unvested stock options that are attributable to the respondent's employment prior to the dissolution of the marriage represents the portion of the unvested stock options that the respondent earned prior to the dissolution of the marriage and therefore belonged to

him under RSA 458:16-a, I. The trial court should "order an equitable division" of only the unvested stock options that the respondent earned prior to dissolution of the marriage. *See* RSA 458:16-a, II. Because the unvested stock options have no present value and may never vest, the trial court should determine the number of shares that represents the petitioner's portion and order distribution of those shares, if and when they vest. *Cf. Rothbart v. Rothbart*, 141 N.H. 71, 74-75 (1996) (explaining method to distribute portion of benefits when actually received).

■ The respondent next argues that the trial court disregarded the financial consequences of exercising stock options when it permitted the petitioner to choose how she would receive her interest in the stock options. The final order provides:

> 1. David Valence shall execute an appropriate QDRO or other document, to effectuate an immediate transfer of the said interest to Lisalynn Valence.

> 2. In the alternative, Lisalynn Valence may choose to receive her share of the options at such time as David Valence exercises the said options, at which time he shall pay Lisalynn Valence sixty-five percent (65%) of the net gain (as defined above) from the monies received. David Valence shall not delay in exercising available options and/or the purchase of stock, except to take advantage of the lower (capital gains) tax rate for the requisite holding period for incentive stock options, unless Lisalynn Valence agrees in writing to a delay.

The court order defines net gain as "proceeds, less any taxes payable, fees, commissions, or other related costs incurred by [the respondent] upon exercising those options." The respondent contends that by requiring him to "exercis[e] available options" without delay, the petitioner may require him to purchase stock with his own funds. Although the petitioner suggests that it is in her best interest to ensure that all transactions are accomplished in the most advantageous manner, the order does not clearly set forth alternatives for purchasing the stock when exercising options. On remand, the trial court should clarify its ruling to protect the respondent's equitable share of the stock options and to ensure that he is not required to expend his own resources to distribute to the petitioner her share.

■ The respondent next contends that the trial court erred by making insufficient findings to justify the property distribution. The trial court, however, ruled on each of the 209 findings and rulings requested by

counsel. Moreover, the respondent does not argue that the trial court was not justified in making an unequal distribution; in fact, in his brief he concedes that the trial court made the requisite findings to support an unequal distribution. Given this concession, the respondent's argument is without merit and we need not address it further.

■ The respondent also contends that the trial court failed to allocate his margin account. The margin account holds stock that was purchased upon exercising some of the vested stock options granted by his employer. In its order, the trial court awarded each party "fifty percent (50%) interest (*before* any reduction due to loans taken against the same by David Valence) in any . . . accounts . . . standing in the name of David Valence, . . . relative to his employment." The trial court further provided: "Notwithstanding the above, if the margin account balance awarded to Lisalynn Valence cannot be paid from that account, then David Valence shall transfer one-hundred percent (100%) of the IRA account to an IRA or other account of Lisalynn Valence's choice and in her name alone . . . ." This language clearly indicates that the court intended to divide the assets held in the margin account equally, while allocating all of the debt in that account to the respondent. Accordingly, we find no error.

■ Finally, the respondent argues that the trial court erred in awarding a fixed amount of child support to the petitioner to continue until the last child "attains the age of eighteen (18) or graduates from high school, whichever occurs last." RSA 458:35-c (1992) provides that "unless a legal order expressly allocates the payments on a per child basis," "the amount of a child support obligation stated in the order for support shall remain as stated in the order until all dependent children for whom support is provided in the order shall terminate their high school education or reach the age of 18 years, whichever is later." The trial court did not expressly allocate the payments on a per child basis, and therefore the child support order is consistent with statute. We find no error.

*Affirmed in part; reversed in part; remanded.*

BRODERICK, J., sat for oral argument but did not take part in the final vote; BROCK, C.J., and NADEAU, J., concurred; DALIANIS, J., dissented.

DALIANIS, J., dissenting. The first issue raised in this appeal is whether the trial court erroneously included the respondent's unvested stock options granted during the marriage in the marital estate. I believe that inclusion of these unvested stock options in the marital estate was correct as a matter of law.

RSA 458:16-a, I (Supp. 2001) provides that "all tangible and intangible property and assets, real or personal, belonging to either or both parties, whether title to the property is held in the name of either or both parties" is included in the marital estate and is subject to equitable distribution. The statute specifically provides that intangible property "includes, but is not limited to, employment benefits, vested and non-vested pension or other retirement benefits or savings plans." *Id.*

Although the statute does not expressly refer to stock options, either vested or unvested, I believe that the reference to "intangible property" which includes "employment benefits" is sufficient to bring unvested stock options within its purview. As the Massachusetts Supreme Judicial Court explained in *Baccanti v. Morton*, 752 N.E.2d 718, 726 (Mass. 2001):

> In their simplest form, stock options are another way for employers to compensate their employees .... The fact that the options will vest in the future (even after dissolution of the marriage) is no different from unvested retirement benefits, and we have held that unvested retirement (including pension) benefits are assets that may be included when dividing the marital estate.

*See Halliday v. Halliday*, 134 N.H. 388, 391 (1991) ("a pension interest is property subject to equitable distribution notwithstanding the fact that it is not vested"). As we explained in *Halliday*, in connection with pensions, "[t]he fact that a pension is without present value, or that such value is *de minimis*, may be taken into account under subparagraph (o) of paragraph II [of RSA 458:16-a]" but is not a permissible reason to exclude it from the marital estate. *Id.*; *see also Flaherty v. Flaherty*, 138 N.H. 337, 340 (1994) (remainder interest in trust that has value only in the future does not prevent inclusion of the interest in the marital assets). Similarly, that an unvested stock option is without present value does not exclude it from the marital estate, although the trial court may take this into account when dividing the estate between the divorcing parties.

The majority implies that the unvested stock options were "acquired in part before and in part after" the parties' marriage was dissolved. I disagree with this description. In my view, the options were "acquired" when they were granted. Stock options are like other forms of deferred compensation, *see Fisher v. Fisher*, 769 A.2d 1165, 1168 (Pa. 2001), and whether vested or not, are an economic resource to which a value may be attributed. *See Chen v. Chen*, 416 N.W.2d 661, 663 (Wis. Ct. App. 1987) (stock option is enforceable contractual right). Because all of the options at issue were granted during the marriage, they were "acquired" during the marriage as well. *See Green v. Green*, 494 A.2d 721, 728 (Md. Ct. Spec.

App. 1985); *see also In the Matter of Preston and Preston*, 147 N.H. 48, 52 (2001) (settlement of personal injury claim providing monthly payments to begin four years after parties separated was marital asset subject to equitable distribution).

The majority adopts a "time-based" formula to determine the extent to which unvested stock options may be included within the marital estate, reasoning that the formula is required because the stock options at issue "may have been a reward for past services, an incentive for future services, or a combination of both."

New Hampshire law does not mandate the use of this formula, however. Unlike other jurisdictions, New Hampshire law requires that *all* property of the parties be deemed part of the marital estate "without regard to title, or to when or how acquired." *In the Matter of Preston and Preston*, 147 N.H. at 49 (quotation omitted). I believe that under New Hampshire law, unvested stock options, like any other property to which a spouse holds title, must be considered part of the marital estate even if given, in part, for services to be performed after the marriage has dissolved. *See id.* (settlement award is marital property "regardless of the underlying purpose of the award or the loss it is meant to replace" (quotation omitted)). In my view, New Hampshire law dictates that we join the minority of jurisdictions that include all unvested stock options granted during the marriage in the marital estate, regardless of the purpose for which they were granted. *See, e.g., Fisher*, 769 A.2d at 1168-69; *Chen*, 416 N.W.2d at 663.

Requiring use of the "time-based" formula conflicts with the generally broad discretion given to trial courts to distribute property equitably upon divorce. *See Bursey v. Bursey*, 145 N.H. 283, 285 (2000). Even those States that have approved the "time-based" formula do not require it in all cases. As the California Court of Appeals stressed in *In re Marriage of Hug*, 201 Cal. Rptr. 676, 685 (Ct. App. 1984), "no single rule or formula is applicable to every dissolution case involving employee stock options."

Moreover, the formula is premised upon an assumption that is inapplicable to New Hampshire divorce law. The purpose of the formula approved by the California Court of Appeals in *Hug* was to allocate between the community property interest in the stock options and the separate property interest in the options. *Id.* at 678. Under California law, the community's share of property interests reflects "the extent of the community effort" in earning the property at issue. *Id.* at 684. Since *Hug*, other community property jurisdictions have approved of the "time-based" formula. *See, e.g., In re Marriage of Short*, 890 P.2d 12, 15-16 (Wash. 1995).

Jurisdictions that are not community property jurisdictions have also approved of the "time-based" formula. These jurisdictions also seek to

divide property upon divorce so that it reflects the extent of the joint effort of the spouses in acquiring the property. *See, e.g., Davidson v. Davidson,* 578 N.W.2d 848, 854 (Neb. 1998) (property in marital estate includes only that which is "accumulated and acquired during the marriage through the joint efforts of the parties"); *Pascale v. Pascale,* 660 A.2d 485, 498 (N.J. 1995) (focus in case involving distribution of wife's stock options was on "whether the nature of the asset is one that is the result of efforts put forth during the marriage by the spouses jointly, making it subject to equitable distribution" (quotation omitted)); *Baccanti,* 752 N.E.2d at 728 (purpose of dividing property under Massachusetts statute is to "recognize and equitably recompense the parties' joint efforts in obtaining and maintaining marital assets" (quotation omitted)).

In New Hampshire, the equitable division of property need not reflect the parties' joint efforts in obtaining or maintaining a marital asset. *See* RSA 458:16-a, II (Supp. 2001). The "actions of either party during the marriage which contributed to the growth or diminution in value of property owned by either or both of the parties" is but one of several factors that the court may consider when deciding that an equal division of property is not equitable under the circumstances. *See* RSA 458:16-a, II(f). Accordingly, I would not require trial courts in New Hampshire to subject to equitable distribution only that portion of the unvested stock options attributable to the option holder's efforts during the marriage.

The respondent argues that the "time-based" formula is mandated because it is similar to the approach we have used with pensions. With respect to pensions, we have carved out a special exception to the general rule that leaves distribution of marital assets to the trial court's "sound" discretion. *Holliday v. Holliday,* 139 N.H. 213, 216, 217 (1994). We have ruled that the trial court must apportion only those pension benefits that are attributable to the retiree's employment during the marriage. *See Hillebrand v. Hillebrand,* 130 N.H. 520, 525 (1988). To determine this, the trial court usually should divide the number of months the retiree was employed during the marriage and prior to commencement of the divorce proceedings by the total number of months of credits he will have earned toward his pension as of the date benefits commence. *Id.* We have ruled that trial courts may deviate from this formula "[o]nly under unusual circumstances." *Rothbart v. Rothbart,* 141 N.H. 71, 76 (1996).

The respondent argues that because pension benefits and stock options are similar, we should create a similar special exception for unvested stock options. I believe that to do so is error. We created the special exception for pension benefits before the New Hampshire legislature enacted RSA 458:16-a, which, for the first time, defined the property subject to equitable distribution in a divorce proceeding. *See Halliday,* 134 N.H. at 391;

*Blanchard v. Blanchard,* 133 N.H. 427, 430 (1990). While we have continued to adhere to these rulings under stare decisis, I see no reason to extend them to unvested stock options.

Additionally, I believe that the facts of this particular case do not militate in favor of creating the special exception the respondent seeks. According to the respondent's own testimony, the stock options were granted to him annually based upon his work performance for the *prior* year. They were thus given as compensation for services rendered during, not after, the marriage. Similarly, the number of options granted to the respondent, and their exercise price, were all established during, not after, the marriage. The primary benefit of the options — their exercise price — was thus obtained by the respondent during the marriage. Any fluctuation in value or gain to be realized would be a function of market conditions, not the respondent's future work performance.

The second issue raised in this appeal is whether the trial court's division of the unvested stock options was a clearly unsustainable exercise of its discretion. *See Preston,* 780 A.2d at 1287; *cf. State v. Lambert,* 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). I believe that its method of distributing the unvested stock options was sustainable, and, thus, should be affirmed.

The trial court distributed the stock options as follows. With respect to the vested options, the respondent was required to pay the petitioner "the net proceeds" of sixty-five percent of his vested stock options earned by him to the date of the decree, "less any taxes payable, fees, commission or other related costs incurred by him upon exercising those options."

With respect to the unvested options, the court required the respondent to pay to the petitioner

> the net proceeds, less any taxes payable, fees, commissions, or other related costs incurred by him upon exercising those [stock] options granted up to and including the grant in the year 2000 . . . , sixty-five percent (65%) of his unvested options that vested in 1999 and sixty-five percent (65%) of the unvested options that will vest in the years 2000, 2001, 2002, 2003 and 2004.

The court deemed any stock options earned by the respondent after the date of the decree to be the respondent's separate property.

The court gave the petitioner the choice of obtaining her interest in the stock options either through an immediate transfer of them or when the respondent exercised the options. I believe that the first alternative was error because it appears that the stock options themselves are not transferable.

The court's second alternative, however, is an approved method for valuing and distributing stock options upon divorce, sometimes referred to as the "if and when received" valuation method. *See Baccanti*, 752 N.E.2d at 731. Under this method, the court determines the percentage of the proceeds from the stock options (stock or cash received from the sale of the stock) due the spouse if and when the options vest and are exercised. *See id.*; *see also* Annotation, *Divorce and Separation: Treatment of Stock Options for Purposes of Dividing Marital Property*, 46 A.L.R. 4TH 640, 657 (1986); Kindregan, *Unexercised Stock Options and Marital Dissolution*, 34 SUFFOLK U.L. REV. 227, 234-35 (2001).

The trial court's use of the "if and when received" valuation method was consistent with its broad discretion to divide property between divorcing spouses. *See Rothbart*, 141 N.H. at 74-75 (discussing use of similar method in pension cases); *Baccanti*, 752 N.E.2d at 731-32 (approving trial court's use of "if and when received" method for dividing unvested stock options as consistent with court's broad discretion). As we explained in *Hodgins v. Hodgins*, 126 N.H. 711 (1985), with respect to pensions, the problem of valuation "may be avoided, and the risks of uncertainty evenly placed upon the parties, by a decree providing that upon maturity of the pension rights the recipient pay a portion of each payment received to his or her former spouse." *Id.* at 716 (quotation omitted). Similarly, in the context of dividing unvested stock options, a court may permissibly avoid the problem of valuation by providing that upon exercise of the stock option, the option holder pay a portion of the net gain (if any) to his or her former spouse. As the court explained in *Baccanti*, "[a]lthough a present division of assets is generally preferable, if present valuation is uncertain or impractical, as it often will be with unvested stock options, the better practice is to order that any future recovery or payment be divided, if and when received, according to a formula fixed in the property assignment." *Baccanti*, 752 N.E.2d at 731 (quotation omitted).

For all of the above reasons, I respectfully dissent.