■ Susan Wiener, Respondent-Appellant, v Jack Wiener, Appellant-Respondent. [868 NYS2d 197]—

Defendant placed the proceeds from the sale of his premarital apartment ($218,000) into the parties' joint account; he admitted that the money became "part of a fungible bulk." In addi-

tion, the parties then purchased a stock fund with money from the joint account. Under the circumstances, this commingling caused defendant's property to become marital property (*see e.g. Chiotti v Chiotti*, 12 AD3d 995, 996-997 [2004]; *Rheinstein v Rheinstein*, 245 AD2d 1024, 1025-1026 [1997]). Even if, arguendo, defendant placed the proceeds from the sale of his premarital apartment into the parties' joint account because of plaintiff's promises and threats, there is no indication that he agreed to purchase the stock fund due to plaintiff's promises and threats. Since the stock fund subsequently declined in value, it would be unfair to plaintiff to give defendant the full value of the money that was used to purchase the stock fund.

It is true that plaintiff did not rebut defendant's testimony that he transferred an additional $184,000 ($130,000 plus $54,000) of his premarital savings to the parties' joint account because of her promises and threats. However, the Special Referee, who heard and saw the witnesses, could have decided not to credit defendant's testimony. Moreover, defendant presented no documentary evidence showing that the $130,000 was his separate property. By contrast, he submitted an exhibit showing that the $54,000 came from his separate account. In addition, plaintiff admitted that approximately $50,000 of the funds used to purchase the marital residence came from defendant's premarital savings account and that defendant could get a credit in that amount. Under the circumstances, defendant should be given credit for $54,000 (*see e.g. Mink v Mink*, 163 AD2d 748, 749 [1990]).

The parties made a total down payment of $291,600 on the marital residence. If $54,000 came from defendant's separate property, defendant contributed 60% of the purchase price, and plaintiff contributed 40% ($291,600 - $54,000 = $237,600 [marital portion] ÷ 2 = $118,800 [plaintiff's contribution] ÷ $291,600 = 40%). There is $900,000 of equity in the marital residence to be divided between the parties. If it were divided 60-40 between defendant and plaintiff, defendant would get $540,000, and plaintiff would get $360,000. If, on the other hand, each party were given credit for his/her original contribution (plaintiff: $118,800; defendant: $172,800 [$118,800 + $54,000]), and the appreciation ($608,400 [$900,000 - $118,800 - $172,800]) were divided equally between the parties, defendant would get $477,000 ($304,200 + $172,800), and plaintiff would get $423,000 ($304,200 + $118,800). The difference between the two approaches ($63,000) is neither a "spectacular windfall" for plaintiff (*Butler v Butler*, 171 AD2d 89, 92 [1991]) nor an "unjust result" (*id.*). Therefore, it was not an improvident

exercise of the Special Referee's discretion (*see id.* at 90) to divide the appreciation of the marital residence equally between the parties.

Defendant should be given credit for 50% of the payments that he made on the loan for the marital residence after plaintiff moved out (*cf. e.g. Johnson v Chapin*, 49 AD3d 348, 360 [2008]).

Plaintiff's expert's valuation of the enhanced earning capacity (EEC) from plaintiff's MBA was "fatally flawed" (*Morales v Morales*, 230 AD2d 895, 896 [1996], *lv denied* 90 NY2d 804 [1997]) because he used the base line earnings of actuaries having 11 years of experience, when plaintiff was never an actuary. However, defendant's expert's final report was also flawed: he used one anomalously high year of plaintiff's earnings—earned three years before the commencement of this action and five years before trial—as the top line earnings. The most reasonable evidence in the record of plaintiff's EEC is defendant's expert's alternative calculation based on top line earnings of $177,000. This calculation results in an EEC of $1,111,000. We decline to disturb the percentage of EEC (10%) awarded by the Special Referee (*see e.g. Brough v Brough*, 285 AD2d 913, 916 [2001]).

Defendant entered into evidence a letter from his former employer showing the amount that he contributed to his retirement savings during each year of the marriage. This is better evidence than plaintiff's testimony that defendant would save about $50,000 to $60,000 per year. In 1996, defendant contributed $34,042.96, but the parties married on August 4, so only five-twelfths (August-December), or $14,184.56, is marital property. From 1997 through 2003 (i.e., during the full years of the marriage), defendant contributed a total of $234,503.52. In 2004, defendant contributed $51,980.97, but plaintiff filed this divorce action on July 21, so only seven months (January-July), or $30,322.23, should be included. The grand total is $279,010.31. Defendant admitted that he told plaintiff during their marriage that his retirement funds were for the two of them. Therefore, plaintiff should be awarded half of $279,010.31, or $139,505.15.

During the marriage, plaintiff worked at, inter alia, Schroders and Goldman Sachs. Defendant seeks half the value of (1) a rollover from plaintiff's Schroders IRA and (2) her Goldman Sachs 401(k). However, he is comparing apples to oranges: he seeks half of the most recent *value* of plaintiff's retirement savings, but he offers plaintiff only a portion of the *contributions* that he made to his retirement savings during the marriage (i.e., none of the appreciation on the contributions). Since defendant presented no evidence of the amount of the contribu-

tions that plaintiff made to her retirement accounts during the marriage, he failed to meet his burden of proof.

Defendant established that his mother gave him $8,570 via a series of checks. However, his evidence also showed that $5,000 of this amount was deposited into the parties' joint account. This commingling caused the $5,000 to become marital property (*see e.g. Glazer v Glazer*, 190 AD2d 951, 953 [1993]; *Di Nardo v Di Nardo*, 144 AD2d 906, 907 [1988]). Therefore, defendant is entitled to a credit of only $3,570, not $8,570.

The parties jointly lent $5,000 to plaintiff's friend, but the friend repaid the loan to plaintiff alone, and plaintiff deposited the repayment into her own separate account. Plaintiff admitted at trial that defendant was entitled to half of the repayment. Therefore, defendant should be given a credit of $2,500.

During the marriage, plaintiff acquired Goldman Sachs stock. In her most recent net worth statement, she valued it at $6,890. Defendant should be given a credit for half of that amount, or $3,445.

In early 2004, defendant's bonus for 2003 was deposited into the parties' joint account. After plaintiff left the marital residence, she removed $100,000 from the joint account. Plaintiff deposited her bonus for 2003 ($18,000) into her own separate account. Under the circumstances, defendant should be given a credit of $9,000.

We have considered defendant's remaining arguments, including those relating to 2004 taxes and plaintiff's jewelry, and find them unavailing.

Turning to the cross appeal, we reject plaintiff's argument that she is entitled to part of defendant's postdivorce severance package because the first, originally offered $180,000 of the package was in exchange for defendant's years of service. *Olivo v Olivo* (82 NY2d 202 [1993]) rejected a " 'length of service' test for marital property" (*id*. at 208). "Instead, the test . . . is whether the compensation in question is a form of deferred compensation" (*id*.). As defendant was not entitled to even the original $180,000 severance package unless he signed, and did not revoke, a separation agreement and general release, the original $180,000 severance offer was akin to the "separation payment" that *Olivo* deemed not to be marital property (*id*. at 205, 208).

The Special Referee did not improvidently exercise her discretion by refusing to order defendant to pay plaintiff's counsel fees (*see e.g. Garrison-Horgan v Horgan*, 234 AD2d 957, 959 [1996]; *Carman v Carman*, 22 AD3d 1004, 1009 [2005]).

Concur—Mazzarelli, J.P., Friedman, Gonzalez, Buckley and Sweeny, JJ.