NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

9th Circuit Court-Merrimack Family Division
No. 2017-0697


IN THE MATTER OF MITCHELL COHEN AND MARIAN RICHARDS

Argued:  January 10, 2019
Opinion Issued:  March 29, 2019


Devine, Millimet & Branch, Professional Association, of Manchester (Joshua H. Bearce and Ronald J. Caron on the brief, and Mr. Caron orally), for the petitioner.


Kazarosian Costello LLP, of Haverhill, Massachusetts (Janet E. Dutcher and Marsha V. Kazarosian on the brief, and Ms. Dutcher orally), for the respondent.


DONOVAN, J.  The respondent, Marian Richards, appeals an order of the Circuit Court (Introcaso, J.) approving a divorce decree recommended by the Judicial Referee (Love, Esq.).  On appeal, the respondent argues that the trial court erred by: (1) improperly excluding certain estimated expenses claimed by the respondent in determining the alimony award; (2) classifying as income, rather than marital property, payments the petitioner, Mitchell Cohen, may receive pursuant to deferred compensation and severance agreements; and (3) improperly calculating the respondent's share of those payments, if the court properly classified them as income.  We vacate and remand.

The record supports the following undisputed facts.  The parties met in 2004 and married in 2006.  In 2015, they separated and the petitioner initiated

divorce proceedings. The petitioner is a physician who has been employed by SJ Physician Services, Inc. (SJ) since 1994. The respondent was unemployed throughout most of the marriage but obtained employment approximately 18 months after the parties separated. At the time of the trial court's final divorce decree, the petitioner was 58 years old, and the respondent was 61 years old.

In 1996, SJ and the petitioner entered into a "Deferred Compensation Agreement," by which the petitioner will receive a "retirement benefit" or, alternatively, a "death benefit," upon meeting certain conditions. Pursuant to this agreement, the petitioner became eligible to receive deferred compensation payments of $100,000 a year, in the form of monthly payments, for a period of ten years upon reaching his 21st employment anniversary with SJ in 2015. However, these payments are conditioned upon the petitioner's continued employment by SJ until his age of retirement, which is defined as the first day of the month following the petitioner's 65th birthday. Alternatively, if the petitioner dies before he reaches retirement age, his named beneficiary will receive the 10-year payment of $100,000 on a monthly basis or in a lump sum.

Additionally, pursuant to a separate severance agreement with SJ, dated July 2013, if the petitioner's employment with SJ is terminated without cause prior to his retirement, SJ is obligated to pay him a scheduled, lump sum payment, based upon the petitioner's length of employment. If the petitioner dies within 90 days of the scheduled payment, the lump sum will be paid to the petitioner's named beneficiary.

In the divorce proceeding, the parties agreed that an award of alimony was warranted but disagreed as to the amount and duration of the award. The parties' proposals also differed as to the disposition of the deferred compensation and severance payments. The respondent sought a 50% distribution of the amount of any deferred compensation or severance pay that accrued between the date of the marriage and the date the petitioner filed the divorce petition, in the event the petitioner receives either of these payments. See RSA 458:16-a, II (2018) (requiring marital property to be equitably divided between the parties in a divorce action). The petitioner, on the other hand, proposed that any payments he receives as deferred compensation or severance pay should be paid to the respondent as "[a]dditional [a]limony," calculated as 10% of the gross sum of the deferred compensation and severance pay that accrued during the parties' 9-year marriage.

The trial court awarded the respondent alimony, payable until her attainment of full retirement age, but awarded less than she requested in her proposed divorce decree. In determining the alimony award, the trial court considered the respondent's age, the property awarded to her by the divorce decree as a future source of income, her available income from post-separation employment, and her expenses. The court did not consider certain unspecified expenses relating to the respondent's home, which the trial court characterized

2

as "extraordinarily high" and "voluntarily" incurred, or "a portion of the expenses allocated for anticipated future uninsured health/dental care," which the trial court described as "speculative."

With respect to its division of the marital property, the trial court awarded "slightly more of the assets" to the respondent, giving "greater weight . . . to the fact that the [respondent] is closer to retirement and has [fewer] opportunit[ies] to acquire more assets in the future." See RSA 458:16-a. Assets subject to this division included the value of retirement and tax-deferred accounts, such as 401(k) plans and IRA accounts, and death benefits available to the petitioner through his employment, including "death benefits related to deferred compensation and severance income." However, the trial court considered any payments the petitioner may receive from the retirement benefit under the deferred compensation agreement or the severance agreement as income rather than marital property, reasoning that "it would be fairer for these 'benefits' to be treated as income" given "the terms under which these plans may be implemented."

Based upon this reasoning, the trial court awarded the respondent "Deferred Compensation Alimony" and "Severance Alimony," in addition to the base alimony award, should the petitioner receive payments under either agreement. The trial court adopted the petitioner's method of calculating the additional alimony, but ordered the petitioner to pay the respondent 17%, rather than 10%, of the gross sum of the deferred compensation and severance pay that accrued during the parties' marriage. The petitioner's obligation to pay this additional alimony, should he receive payments pursuant to either agreement, expires upon the death of either party or the respondent's remarriage.[1] Following the trial court's issuance of the final divorce decree, the respondent moved to reconsider. The trial court denied the motion, and this appeal followed.

On appeal, the respondent raises three challenges to the trial court's divorce decree. First, she argues that the trial court erred when it excluded her household, medical, and dental expenses in its alimony calculation without setting forth any factual support for its ruling. Second, she argues that the trial court erred when it considered the payments the petitioner may receive under the deferred compensation and severance agreements as income rather than marital property subject to equitable distribution. See RSA 458:16-a. Finally, she argues that, even if the trial court correctly categorized the deferred compensation and severance payments as income, the trial court erred when it arbitrarily reduced her alimony award in light of those payments.

---

[1] Unlike the base alimony award, however, the petitioner's obligation to make these additional alimony payments to the respondent does not appear to end upon her attainment of full retirement age.

In a divorce case, the trial court has broad discretion to determine and order alimony payments; its determination of alimony is based primarily on the parties' income and need.  See In the Matter of Nassar & Nassar, 156 N.H. 769, 772-73, 777 (2008) (the primary purpose of alimony is rehabilitative); RSA 458:19-a (Supp. 2018).  However, unlike alimony, the trial court has a statutory obligation to equitably apportion marital property, In the Matter of Hampers & Hampers, 154 N.H. 275, 286 (2006), which includes any property acquired up to the date of a decree of legal separation or divorce.  See In the Matter of Heinrich & Heinrich, 164 N.H. 357, 362 (2012); RSA 458:16-a.  Thus, the trial court must first determine, as a matter of law, what assets constitute marital property under RSA 458:16-a, I.  See In the Matter of Goodlander & Tamposi, 161 N.H. 490, 495 (2011); RSA 458:16-a, I (setting forth types of assets that constitute marital property).  Once the trial court determines the parties' marital property, it then exercises its discretion to equitably distribute those assets.  See Goodlander, 161 N.H. at 495; RSA 458:16-a, II (standard for equitably dividing marital property).  When a party requests alimony, the trial court may exercise its discretion by ordering an alimony award, considering, inter alia, the marital property awarded to each party and the parties' sources of income and need.  See Nassar, 156 N.H. at 772-73; RSA 458:19-a.

Accordingly, we first determine whether the trial court erred in classifying the deferred compensation and severance payments as income rather than marital property.  We review de novo a trial court's determination of what assets constitute marital property under RSA 458:16-a, I.  Goodlander, 161 N.H. at 495.  Because marital property is defined by statute, resolution of this issue requires that we engage in statutory interpretation.  In the Matter of Eckroate-Breagy & Breagy, 170 N.H. 247, 249 (2017).  In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute and considered as a whole.  Id.  We interpret legislative intent from the statute as written, and we will not consider what the legislature might have said or add words that the legislature did not include.  Id.  Moreover, we interpret statutes in the context of the overall statutory scheme and not in isolation.  Id. at 250.

Pursuant to RSA 458:16-a, I, "all tangible and intangible property and assets, real or personal, belonging to either or both parties, whether title to the property is held in the name of either or both parties" is subject to equitable distribution.  Under RSA 458:16-a, I, intangible marital property "includes, but is not limited to, employment benefits, vested and non-vested pension or other retirement benefits, or savings plans."  Based upon this broad statutory language, we have previously adopted the "mechanistic approach" to determine whether an item constitutes marital property.  Heinrich, 164 N.H. at 360-61.  Under this approach, property subject to equitable distribution includes any property acquired before the decree of legal separation or divorce.  Id. at 361.  Thus, "future earnings of a spouse from employment are not considered to be property at the time of the divorce."  Id. at 362 (quotation omitted).

4

On this basis, the petitioner argues that the trial court correctly considered payments under both agreements as income because the petitioner did not acquire the payments or meet the conditions that would entitle him to the payments prior to the divorce. Therefore, the petitioner asserts that these payments were a mere "expectancy" at the time of the divorce, and, accordingly, "represent future income" that will be "paid in exchange for future services."

The statute does not expressly state whether conditional, contractual payments, which a spouse has yet to acquire or become entitled to acquire at the time of the divorce, constitute marital property. See RSA 458:16-a, I. However, the statute's non-exhaustive list of intangible marital property is instructive in determining the scope of the general provisions of the statute. See Kurowski v. Town of Chester, 170 N.H. 307, 311 (2017) (when specific words in a statute follow general ones, the general words are used to embrace only objects similar in nature to those enumerated by the specific words). When a statute contains a non-exhaustive list of subjects, we have previously applied the principle of ejusdem generis to determine whether a non-enumerated subject is similar in nature to the enumerated subjects, and thus within the scope of the statute. Id. Therefore, we employ the principle of ejusdem generis to assess whether the conditional payments under the deferred compensation and severance agreements are similar in nature to the other enumerated property, and thus fall within the scope of RSA 458:16-a, I.[2] Id.

We begin first with the "retirement benefit" under the deferred compensation agreement. The statute expressly includes "vested and non-vested pension or other retirement benefits" as intangible marital property. RSA 458:16-a, I (emphasis added). A pension plan, "in its simplest form, is a promise by the employer to pay a periodic benefit (usually for life) to employees who meet the requirements set forth in the plan." Steven R. Brown, An

---

[2] In In the Matter of Preston and Preston, 147 N.H. 48 (2001), we declined to utilize the doctrine of ejusdem generis to determine whether a husband's annuity constituted marital property. Id. at 51. The annuity, however, was awarded to the husband in a settlement agreement executed during the marriage. Id. at 48-49. Because "[i]t was the legislature's intent that any property acquired up to the date of a decree of legal separation or divorce would be subject to equitable distribution," we concluded that the annuity constituted marital property "regardless of whether [it] resemble[d] the items listed in RSA 458:16-a, I." Id. at 51.

Here, we are determining for the first time whether conditional payments, based upon contractual agreements executed prior to the divorce, constitute marital property acquired prior to the divorce, even though the petitioner did not receive the payments themselves or meet the conditions that would entitle him to the payments during the marriage. Because the statute is silent on this issue, the intangible property enumerated in the statute provides guidance on when a benefit is considered to be "acquired" under the statute. Therefore, unlike in Preston, we conclude that employing the doctrine of ejusdem generis is necessary to determine whether the payments at issue here were "acquired" prior to the divorce.

Interdisciplinary Analysis of the Division of Pension Benefits in Divorce and Post-Judgment Partition Action: Cures for the Inequities in *Berry v. Berry*, 39 Baylor L. Rev. 107, 110 (1987) (quotations omitted).  Typically, the requirement the employee must meet to become eligible to receive payments under the plan is to complete a requisite term of employment.  See Bender v. Bender, 785 A.2d 197, 203, 211 (Conn. 2001).  Once an employee meets this requirement, payments under a pension plan typically do not commence until the employee reaches retirement age or elects to retire.  See Cohen v. Cohen, 937 S.W. 2d 823, 826 (Tenn. 1996).

Accordingly, a "vested" pension plan is one in which the employee has attained the eligibility to receive pension payments upon retirement by reaching the requisite term of employment.  See Am. Fed'n of Teachers — N.H. v. State of N.H., 167 N.H. 294, 302, 304 (2015) ("vesting" often refers to the period provided by a plan for which an employee must work to become eligible for a pension or other retirement benefit provided by the employer if and when the employee attains retirement age).  A non-vested pension, therefore, "is a pension that has not fulfilled the time period requirement."  Grode v. Grode, 543 N.W. 2d 795, 802 (S.D. 1996); see Bender, 785 A.2d at 212 (describing unvested pension benefits as "dependent on certain future contingencies such as length of service and age").  Therefore, when an employee terminates employment before completing the required term of employment under a pension plan, the employee relinquishes any interest in receiving pension payments from the employer.  See Bender, 785 A.2d at 210.

By including "non-vested pension or other retirement benefits," the statute demonstrates that, at the time of the divorce, a spouse need not acquire either a right to or a specified interest in, a pension or retirement benefit itself, or the eligibility to receive the benefit, for it to constitute marital property subject to equitable division.  See Halliday v. Halliday, 134 N.H. 388, 391 (1991) ("the nature of the pension as vested or non-vested is not a legal distinction under the statute"); see also In the Matter of Valence and Valence, 147 N.H. 663, 667 (2002) (unvested stock options constitute intangible marital property).  Rather, the spouse need only have acquired a sufficient interest in receiving the retirement benefit at the time of the divorce based upon the express terms of the benefit plan.  RSA 458:16-a, I; see Bender, 785 A.2d at 210 ("the defendant's expectation in his [non-vested] pension plan, as a practical matter, is sufficiently concrete, reasonable and justifiable as to constitute a presently existing property interest for equitable distribution purposes"); cf. Goodlander, 161 N.H. at 495-96 (distributions from a trust at the discretion of the trustee was not a fixed, certain and absolute right and was therefore a "mere expectancy," not marital property).  Therefore, a spouse's present inability to meet a condition precedent necessary to receive a retirement benefit does not exclude the benefit from marital property, where, as here, the spouse maintains a present interest in receiving the benefit at a later date pursuant to the terms of the benefit plan.  See Bender, 785 A.2d at 210.

The "retirement benefit" under the deferred compensation agreement here contractually binds SJ to commence monthly payments of the benefit once the petitioner attained his 21st employment anniversary, provided he remains in SJ's employ as of his retirement. It is undisputed that he has attained the first condition — 21 years of employment with SJ — during the course of his marriage. The only remaining condition to the deferred compensation benefit, therefore, is the petitioner's continued employment by SJ until his retirement. Because the petitioner's benefit is conditioned upon his continued employment by SJ until a certain term, we see no relevant distinction between the conditional status of the retirement benefit required by the deferred compensation agreement and the conditional status of a non-vested pension or other retirement benefit enumerated within RSA 458:16-a, I. See Halliday, 134 N.H. at 391. Accordingly, we conclude that the benefit provided by the petitioner's deferred compensation plan is similar in nature to a non-vested pension benefit and therefore constitutes intangible marital property subject to equitable distribution.

The petitioner contends that the retirement benefit provided by the deferred compensation agreement is not a "tax deferred account akin to a 401(k) plan, pension benefit, IRA, [or] stock option." Yet, the petitioner does not explain his rationale for distinguishing these benefits from the retirement benefit under the deferred compensation agreement. Nevertheless, based upon the specific examples he provides, we construe the petitioner to assert that the deferred compensation benefit is not similar in nature to the benefits enumerated in RSA 458:16-a, I, because the deferred compensation agreement is merely an unfunded, contractual obligation with no present, tangible value to the petitioner. We disagree.

We recognize that a pension benefit is typically funded by continuous contributions made by an employee or an employer over the course of the employee's employment. See, e.g., Grace Ganz Blumberg, Marital Property Treatment of Pensions, Disability Pay, Worker's Compensation, and Other Wage Substitutes: An Insurance, or Replacement, Analysis, 33 UCLA L. Rev. 1250, 1252 (1986) ("An employee pension may be funded entirely by employee contributions, entirely by employer contributions, or by a mix of the two."). We also acknowledge that the petitioner's deferred compensation agreement specifically states that the agreement is an "unfunded arrangement," and that the payments under the agreement come from the "general, unrestricted assets" of SJ to which "no person shall have any interest" by virtue of the agreement.

However, based upon the statute's express inclusion of non-vested pension and retirement benefits, see RSA 458:16-a, I, we conclude that this aspect of the deferred compensation agreement does not distinguish it from the enumerated benefits in RSA 458:16-a, I. Just as the petitioner does not become eligible to receive payments from SJ pursuant to the deferred

7

compensation agreement until he reaches retirement age, an employee with a non-vested pension benefit is not eligible to receive payments from the pension upon retirement until he or she reaches the required term of employment. The relevant inquiry is not whether the benefit plan is supported by existing funds; rather, the relevant inquiry is whether the employee has a present interest in a retirement benefit pursuant to an established plan at the time of the divorce. Here, the deferred compensation agreement provided the petitioner with such an interest at the time of his divorce, conditioned upon his continued employment to the age of retirement, and this interest constitutes marital property.

We briefly address the petitioner's remaining arguments on the deferred compensation agreement's retirement benefit. The petitioner asserts that he did not "earn" the retirement benefit during the marriage because he had not reached retirement age while employed by SJ prior to the divorce. In asserting this argument, the petitioner relies upon the Michigan Court of Appeals decision in Skelly v. Skelly, 780 N.W.2d 368 (Mich. Ct. App. 2009). There, the court ruled that the husband's retention bonus, conditioned upon his continued employment to a specific date that occurred after the marriage, was not marital property. Id. at 371. Because the husband did not meet the condition during the marriage, the court reasoned that the bonus was not "earned" during the marriage and therefore did not constitute marital property. Id.

The ruling in Skelly does not align with the law in New Hampshire with respect to retirement benefits. Because a non-vested pension and other retirement benefits constitute marital property under RSA 458:16-a, I, New Hampshire law does not require a spouse to "earn" the benefit itself or the eligibility to receive the benefit during the marriage. Instead, the proper inquiry is whether the petitioner acquired the interest in the retirement benefit under the deferred compensation agreement prior to the divorce, see Halliday, 134 N.H. at 391, and, here, it is undisputed that the petitioner acquired such an interest pursuant to the deferred compensation agreement. Therefore, we decline to follow the reasoning of the Michigan Court of Appeals in Skelly.[3]

Next, the petitioner asserts that the retirement benefit is not marital property because it is not a product of "any joint efforts" of the parties during

---

[3] Similarly, we conclude that the other decisions cited by the petitioner from courts in other jurisdictions are distinguishable on their facts or contrary to New Hampshire law. See In re Marriage of Wendt, 995 N.E.2d 439, 443 (Ill. App. Ct. 2013) (non-contractual bonus payment was a "mere expectancy," not marital property, where it was made only at the employer's discretion); Edwards v. Edwards, 428 S.E. 2d 834, 837 (N.C. Ct. App. 1993) (decided under prior North Carolina law that expressly considers "the expectation of nonvested pension, retirement, or other deferred compensation rights" as separate property, see N.C. Gen. Stat. § 50-20(b)(2) (1987 & Cum. Supp. 1992) (amended 1997)); Dunham v. Dunham, 125 P.3d 1015, 1018 (Wyo. 2006) (decided under Wyoming law that requires property to be "in [the court's] hands" at the time of the divorce to be subject to equitable division).

the marriage. The petitioner's argument is misplaced. The effort of the parties during the marriage is one factor the trial court may consider when determining the equitable <u>division</u> of marital property. <u>See</u> RSA 458:16-a, II(f) (the trial court may consider, <u>inter</u> <u>alia</u>, "[t]he actions of either party during the marriage which contributed to the growth or diminution in value of the property" in determining the equitable division of property). However, to determine whether an asset <u>constitutes</u> marital property under RSA 458:16-a, I, the proper inquiry is whether the property was acquired up to the date of the divorce decree. <u>See</u> <u>In the Matter of Gordon and Gordon</u>, 147 N.H. 693, 697 (2002) (marital property under RSA 458:16-a, I, includes "any property acquired up to the date of a decree of legal separation or divorce" (quotation omitted)); <u>see</u> <u>also</u> RSA 458:16-a, I ("all tangible and intangible property and assets, real or personal, belonging to either or both parties," is subject to equitable division). Therefore, the effort of the parties during the marriage is not relevant to the determination of whether the retirement benefit constitutes marital property subject to equitable distribution under RSA 458:16-a, I.

Furthermore, contrary to the petitioner's assertion, the absence of a mechanism to enforce the terms of the deferred compensation agreement does not determine whether the retirement benefit constitutes marital property under RSA 458:16-a, I. Although the deferred compensation plan defines the petitioner's status with respect to the benefit as no greater than that of an "unsecured general creditor," the petitioner does not dispute the validity of the deferred compensation agreement that contractually obligates SJ to pay the petitioner the retirement benefit should he reach retirement age while still in SJ's employ. As discussed above, it is the interest in a benefit based upon a benefit plan that renders the benefit marital property, not whether the petitioner will actually receive that benefit. RSA 458:16-a, I.[4]

As with a non-vested retirement benefit, the trial court may consider the conditional nature of the petitioner's retirement benefit in determining the equitable distribution of the marital property based upon the factors set forth in RSA 458:16-a, II, and in tailoring the terms and conditions of the property distribution. <u>See</u> <u>Halliday</u>, 134 N.H. at 391; <u>see</u> <u>also</u> <u>Valence</u>, 147 N.H. at 669 (the trial court should determine petitioner's portion of unvested stock option shares and order distribution "if and when they vest"). Accordingly, because the petitioner has an interest in receiving the retirement benefit upon his retirement under the deferred compensation agreement, we conclude that any future payments he may receive that are attributable to his employment during the parties' marriage constitute marital property subject to equitable division. <u>See</u> <u>Valence</u>, 147 N.H. at 668-69; RSA 458:16-a.

---

[4] In addition, in light of our ruling that the retirement benefit under the petitioner's deferred compensation agreement constitutes marital property, the alternative death benefit provided by the deferred compensation agreement must also be considered marital property subject to equitable division.

9

Next, as to the severance agreement, the respondent argues that the severance pay constitutes an "employment benefit" under RSA 458:16-a, I.  The petitioner, on the other hand, contends that the severance pay represents future income, rather than property, because: (1) he did not acquire the severance pay, or entitlement to the severance pay, during the marriage; and (2) the purpose of the severance pay is to compensate him for lost future income if he becomes separated from his employment with SJ, rather than to reward him for his prior service.

RSA 458:16-a, I, includes as marital property the broad category of "employment benefits."  In viewing this category of marital property within the context of the other enumerated property and the language of the statute as a whole, we conclude that the broad classification of "employment benefits" as intangible marital property in RSA 458:16-a, I, without any limitation or exception, includes conditional, contractual entitlements to benefits acquired through a spouse's employment during the marriage.  To conclude otherwise would exclude certain benefits provided to a spouse by his or her employer prior to the divorce without any statutory authority.  See In the Matter of Sukerman & Sukerman, 159 N.H. 565, 567 (2009) ("all property acquired during the marriage without regard to title, or to when or how acquired is deemed to be marital property unless it is specifically excepted by statute" (quotation omitted)); see also Heinrich, 164 N.H. at 361 ("Had the legislature wanted to exclude workers' compensation benefits from the definition of 'property' for equitable division purposes, it could have done so.").

Here, during the marriage, the petitioner acquired the conditional right to receive a lump sum severance payment, variable in amount based on his length of employment, from SJ in the event that he leaves his employment without cause and prior to retirement.  This lump sum payment, if received, undoubtedly provides a benefit to the petitioner in the event that he is separated from his employment.  Therefore, we conclude that the petitioner's conditional right to receive severance pay pursuant to an employment agreement acquired during the marriage constitutes an employment benefit under the statute, despite its conditional nature.

The petitioner urges us to adopt reasoning applied by courts in other jurisdictions, which would require us to analyze the purpose of the severance agreement to determine whether it is intended to compensate the petitioner for services rendered during his employment or to replace income he would have earned but for his future separation from employment without fault.  See Luczkovich v. Luczkovich, 496 S.E.2d 157, 160 (Va. Ct. App. 1998) (considering "whether the severance pay was intended to compensate the employee for efforts made during the marriage or to replace post-separation earnings"); see also In re Marriage of DeShurley, 255 Cal. Rptr. 150, 152 (Ct. App. 1989); Wiener v. Wiener, 868 N.Y.S. 2d 197, 201 (App. Div. 2008); Davis v. Davis, 87 P.3d 640, 642 (Okla. Civ. App. 2003).  In essence, the petitioner

asks us to adopt the "analytical approach" to classifying marital property, by which the purpose of the payment determines whether it constitutes marital property. Heinrich, 164 N.H. at 360.

We have previously rejected this approach as inconsistent with the law in New Hampshire. Id. at 361 (reaffirming prior conclusion that the analytical approach "did not fit with New Hampshire's legislative scheme" where marital property under RSA 458:16-a, I, includes "all property 'belonging to either or both parties'" (quotation omitted)). Instead, based upon the broad language of the statute, we have employed the "mechanistic approach," where an award or settlement acquired during the marriage is deemed marital property "regardless of the underlying purpose of the award or the loss it is meant to replace." Id. at 360 (quotation omitted); In the Matter of Preston and Preston, 147 N.H. 48, 49-50 (2001); see also Sukerman, 159 N.H. at 567 (applying the mechanistic approach over the analytical approach to conclude that disability pension benefits constitute marital property). The language of RSA 458:16-a, I, remains unaltered since these cases were decided, and thus, we see no reason to depart from this approach now. See, e.g., Heinrich, 164 N.H. at 359 (quoting RSA 458:16-a, I (2004)). Therefore, we decline to adopt the approach utilized by the courts deciding the cases cited by the petitioner and we conclude that the petitioner's severance pay constitutes an employment benefit under RSA 458:16-a, I.

Like the deferred compensation payments, the trial court should consider the conditional and unfunded nature of the severance pay when equitably dividing the marital property based upon the factors set forth under RSA 458:16-a, II. Any obligation of the petitioner to provide payments to the respondent pursuant to an equitable division of the deferred compensation or severance payments must be conditioned upon his receipt of such payment. However, based upon the broad and unlimited language of the statute, we cannot conclude that the deferred compensation and severance pay here do not constitute marital property merely because they are conditional in nature.

Accordingly, the trial court erred when it classified the payments under the deferred compensation and severance agreements as income for the purpose of determining alimony.[5] If the legislature disagrees with our interpretation of the statute, it is free to amend the statutory scheme as it sees fit. See Appeal of Town of Nottingham, 153 N.H. 539, 566 (2006).

We next address the respondent's contention that the trial court erred by excluding certain expenses when it calculated the alimony award. The respondent argues that the trial court's order fails to identify the expenses it

_____

[5] Any equitable division of such marital property may include the consideration of any tax consequences. See RSA 458:16-a, II(j) (the trial court may consider the "tax consequences for each party" in determining the equitable division of marital property).

11

excluded in determining the alimony award calculation or explain why it concluded that such expenses were unreasonable. On this basis, she asserts that the trial court's alimony award is unsupported by the evidence presented at trial and insufficient to meet her reasonable needs.

Trial courts have broad discretion in awarding alimony. In the Matter of Henry & Henry, 163 N.H. 175, 182 (2012). Accordingly, we review the trial court's alimony award under our unsustainable exercise of discretion standard. Id. If there is sufficient evidence to support the trial court's factual findings, we will uphold them. In the Matter of Dube & Dube, 163 N.H. 575, 581 (2012).

At the time of the trial court's divorce decree, New Hampshire law required the trial court to consider the following specific factors to determine the amount of alimony:

> the length of the marriage; the age, health, social or economic status, occupation, amount and sources of income, the property awarded under RSA 458:16-a, vocational skills, employability, estate, liabilities, and needs of each of the parties; the opportunity of each for future acquisition of capital assets and income; the fault of either party as defined in RSA 458:16-a, II(*l*); and the federal tax consequences of the order.

RSA 458:19, IV(b). The respondent does not expressly challenge the trial court's consideration of these factors. Nonetheless, because the respondent argues that the trial court erroneously excluded certain expenses, we construe the respondent's argument as challenging the trial court's consideration of the respondent's health and needs.

The trial court's order, as it relates to the respondent's expenses at issue, states as follows:

> The Court has evaluated wife's expenses in relation to whether they are reasonable and consistent with the parties' lifestyle during the marriage. Wife purchased an older home knowing that it needed extensive and expensive repairs. Some of the extraordinarily high expenses for the home which the wife incurred voluntarily and a portion of the expenses allocated for anticipated future uninsured health/dental care which are speculative, have been excluded for purposes of determining a reasonable alimony award.

Based upon our review of the record, there is sufficient evidence to support the trial court's exclusion of the medical and dental care expenses as speculative. Although the trial court did not specify the "anticipated future uninsured health/dental care" it excluded, the record establishes that these

12

expenses consisted of two unspecified medical procedures and one dental procedure, which are the only anticipated health or dental care the respondent identified. As to the trial court's reason for excluding these expenses as "speculative," we conclude that the record includes sufficient evidence to support the trial court's finding. The respondent's affidavit describes $316 in dental expenses only as an "[e]stimate to replace 2 root canals & 4 cracked fillings," and provides no description of the $429 medical expense. Although the respondent testified that she planned to undergo two future "medical" procedures, and described the "medical and dental" procedures as "necessary," there was no further evidence identifying the nature of the procedures, the reason why they were necessary, or when they will occur. We defer to the trial court's judgment in resolving conflicts in testimony, measuring the credibility of witnesses, and determining the weight to be given to evidence. Henry, 163 N.H. at 183. Accordingly, we do not find the trial court's exclusion of the anticipated medical and dental expenses to constitute an unsustainable exercise of discretion.

However, we cannot reach the same conclusion with respect to the trial court's exclusion of household expenses. The record contains numerous expenses relating to the respondent's home, including several repairs, snow removal, yard maintenance, and utilities. Yet, the court's order states only that it excluded "[s]ome of the extraordinarily high expenses for the home." The petitioner contends that the excluded expenses are "readily ascertainable" by looking at the respondent's financial affidavits submitted to the trial court. Even assuming we can glean from the record which expenses the trial court considered to be "extraordinarily high," the trial court's order states that it excluded only "[s]ome" of those expenses. Therefore, from this record, we cannot ascertain which household expenses the trial court excluded, and, therefore, we cannot sufficiently review its findings to determine whether the court's exercise of discretion on this issue is sustainable. See Dube, 163 N.H. at 581. Accordingly, we remand and order the court to make findings and rulings to support its determination. See Magrauth v. Magrauth, 136 N.H. 757, 763 (1993).

Finally, because we have concluded that the trial court erred in considering the deferred compensation and severance payments as income rather than marital property, we need not reach the respondent's argument that the trial court erred in arbitrarily reducing the supplemental alimony award.

Based upon the foregoing, we vacate and remand the trial court's "Deferred Compensation Alimony" and "Severance Alimony" awards for further proceedings in accordance with this opinion. Furthermore, because we have concluded that the deferred compensation and severance payments are subject to equitable division as marital property, we also vacate and remand the trial court's base alimony award that was based, in part, upon the court's

13

consideration of the award of marital property. On remand, the trial court must: (1) equitably divide the retirement benefit under the deferred compensation agreement and the payment under the severance agreement pursuant to the factors in RSA 458:16-a, II, and the requirements set forth in RSA 458:16-a, IV; and (2) recalculate the respondent's alimony award in accordance with this opinion and RSA 458:19, VI (2018) (amended 2018).

Vacated and remanded.

LYNN, C.J., and HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.